HELTON v BEAMAN

Docket No. 314857. Submitted November 8, 2013, at Detroit. Decided
    February 4, 2014, at 9:00 a.m. Leave to appeal sought.
Matthew Helton brought an action under the Revocation of Pater-
    nity Act, MCL 722.1433 *et seq.*, in the Oakland Circuit Court
    against Lisa M. and Douglas Beaman, seeking to revoke their
    acknowledgment of parentage of a nine-year-old child whom they
    had raised from birth. Defendants had been in a relationship for
    more than 10 years, but separated in the fall of 2002 for a few
    weeks. During that time, Lisa had a sexual relationship with
    Helton. Lisa and Douglas then reunited, but did not marry. Lisa
    gave birth to the child in June 2003. While at the hospital, both
    defendants signed the affidavit of parentage that established
    Douglas as the child's father. Defendants allowed Helton to see the
    child periodically. At Helton's request, defendants agreed to DNA
    paternity testing in 2003. Helton failed to pay the laboratory for
    three years, however, so the parties did not receive the DNA
    results until 2006. The tests established that Helton was the
    child's biological father. Four years later, when the child was seven
    years old, Helton sued defendants, seeking an order of filiation and
    parenting time. While Helton's suit was pending, defendants
    married and the court subsequently dismissed Helton's suit by
    stipulation. Helton brought this suit under the newly enacted
    Revocation of Paternity Act when the child was nine years old.
    Following a bench trial, the court, Elizabeth M. Pezzetti, J., found
    that Helton had no parental relationship with the child and, citing
    MCL 722.1443(4), concluded that it was not in the child's best
    interests to grant Helton the relief he requested. Helton appealed.

    In separate opinions, the Court of Appeals *held*:

    The decision of the trial court was affirmed on other grounds.

    O'CONNELL, J., observed in the lead opinion that a plaintiff filing
an action for revocation of an acknowledgment of parentage must
submit an affidavit under MCL 722.1437(2) attesting to at least one
of the five factors listed in that statute. While the trial court did not
directly rule on the sufficiency of Helton's affidavit, Helton's asser-
tion of a mistake of fact was a sufficient basis to proceed with the
revocation action given that the DNA evidence supported his claim

that defendants had mistakenly believed Douglas was the biological father. The Acknowledgment of Parentage Act, MCL 722.1001 *et seq.*, confers the status of natural and legal father on a man who executes an acknowledgment of parentage. Once the acknowledgment of parentage is complete, the child has the identical status, rights, and duties of a child born in lawful wedlock, effective from birth. A valid acknowledgment of parentage by one man precludes a court from entering an order of filiation for a different man. Because a child can have only one legal father, the trial court could not grant an order of filiation in favor of Helton unless it first revoked defendants' acknowledgment of parentage. *In re Moiles*, 303 Mich App 59 (2013),* held that a court is not required to make a best-interest determination under MCL 722.1443(4) when revoking an acknowledgment. Because the panel was bound by *Moiles*, Judge O'CONNELL would have held that the trial court mistakenly applied those best-interest factors when it denied Helton's request to revoke the acknowledgment. The error did not require reversal, however, because the Revocation of Paternity Act gives courts the discretion to consider other factors when determining whether to revoke an acknowledgment of parentage, and in the absence of the Legislature's identifying the relevant factors or the legal standard, it was appropriate to use the best-interest factors found in MCL 722.23, part of the Child Custody Act. Two of those factors favored maintaining the custodial environment the child has enjoyed thus far, and Judge O'CONNELL concluded that the trial court had properly denied Helton's requests.

K. F. KELLY, J., concurring, agreed that the trial court properly denied Helton's request to set aside the acknowledgment of parentage but also believed that *Moiles* was wrongly decided because it erroneously held that an acknowledgment of parentage is not a paternity determination and accordingly incorrectly concluded that the best-interest factors of MCL 722.1443(4) do not apply to a case involving the revocation of an acknowledgment. An order revoking an acknowledgment of the parentage of a child born out of wedlock is an order setting aside a paternity determination and, therefore, must be subject to a best-interest analysis under MCL 722.1443(4). Because a trial court may appropriately consider the relevant best-interest factors under the Revocation of Paternity Act when deciding whether to revoke an acknowledgment of parentage, Judge KELLY concurred in the lead opinion's decision to affirm but believed that there was no need to resort to the Child Custody Act for guidance. Concluding that the relevant

* *Moiles* was reversed in part and vacated in part after the release of this opinion. See *In re Moiles*, 495 Mich 944 (2014)—REPORTER.

factors listed in MCL 722.1443(4) should be considered in any action brought under the Revocation of Paternity Act, regardless of how paternity was established, Judge KELLY would further have convened a conflict panel under MCR 7.215(J) to resolve the issue. Additionally, contrary to the position of the dissent, the resolution of this case has constitutional implications because the child could be deprived of her fundamental right to maintain a relationship with Beaman, who is her legal father. Finally, Judge KELLY would have concluded that the equitable defense of laches applied in this case and that Helton should have been precluded from bringing this action nine years after the child's birth.

SAWYER, P.J., dissenting, concluded that *Moiles* was correctly decided and would have reversed the trial court's decision and remanded the case for entry of an order revoking the acknowledgment of parentage. The Revocation of Paternity Act addresses three related, but separate situations: (1) setting aside an acknowledgment of paternity, (2) setting aside an order of filiation, and (3) a determination that a presumed father is not the child's father. MCL 722.1437 is the section of the act that concerns setting aside an acknowledgment. Under MCL 722.1437(3), the burden lies with the plaintiff to establish by clear and convincing evidence that the acknowledged father is not the father of the child. Nothing in MCL 722.1437 directs the trial court to consider the best interests of the child when determining whether the plaintiff met that burden of proof. *Moiles* held that a best-interest analysis of the child only applies when the court is faced with setting aside a determination of paternity or a determination that a child is born out of wedlock, not to the decision to set aside an acknowledgment. Because there was no decision by a court here, there was no determination of paternity, only an acknowledgment of it.

Affirmed.

*Gentry Nalley PLLC* (by *Kevin S. Gentry*) for plaintiff.

*Arnold L. Weiner* for defendants.

Before: SAWYER, P.J., and O'CONNELL and K. F. KELLY, JJ.

O'CONNELL, J. In this action brought under the Revocation of Paternity Act, MCL 722.1431 *et seq.*, plaintiff seeks to revoke defendants' acknowledgment of parentage of a nine-year-old child whom defendants have raised from birth. After a bench trial, the circuit court denied

plaintiff's request and also denied plaintiff's requests for an order of filiation and parenting time. Plaintiff now appeals by right.

We conclude that the circuit court reached the correct result, albeit for incorrect reasons. "This Court ordinarily affirms a trial court's decision if it reached the right result, even for the wrong reasons." *Wickings v Arctic Enterprises, Inc*, 244 Mich App 125, 150; 624 NW2d 197 (2000). We affirm on grounds other than those relied on by the circuit court.

### I. FACTS AND PROCEDURAL HISTORY

Defendants, Lisa and Douglas Beaman, have been in a relationship for more than 10 years. In the fall of 2002, they separated for a few weeks. During those weeks, Lisa had a brief sexual relationship with plaintiff, Matthew Helton. Lisa and Douglas then reunited, but did not marry. In June 2003, Lisa gave birth to the child who is the subject of this action. Douglas accompanied Lisa to the hospital for the child's birth. While at the hospital, both defendants signed an affidavit of parentage that established Douglas as the child's father.[1] The child's birth certificate identifies both defendants as the child's parents.

---

[1] This Court could not locate the affidavit of parentage in the electronic record. For purposes of this opinion, the Court has assumed that the affidavit was duly signed and notarized and was properly executed and filed in keeping with the requirements §§ 3 and 5 of the Acknowledgment of Parentage Act, MCL 722.1003 and 722.1005. To be consistent with the terms used in the Acknowledgment of Parentage Act and the Michigan Department of Community Health forms, we refer to the document that defendants signed in the hospital as the "affidavit of parentage" and to the legal record on file with the Michigan Office of the State Registrar as the "acknowledgment of parentage" See Department of Community Health, Affidavit of Parentage <http://www.michigan.gov/documents/Parentage_10872_7.pdf> (accessed November 19, 2013) [http://perma.cc/3YMG-BPMK]; MCL 722.1003 and 722.1005.

Defendants began raising the child as part of their family, along with three other children. When the child was an infant, defendants allowed Helton to see the child periodically. When the child was approximately two months old, Helton asked to have DNA paternity testing conducted for the child. Defendants agreed to allow the testing, which was performed in 2003. Defendants opted to halt Helton's interaction with the child until he obtained the DNA results.

Although Helton planned to pay for the DNA testing, he failed to make full payment to the DNA laboratory for three years. Because of Helton's delay in payment, the parties did not receive the DNA results until 2006. The results established that Helton is the child's biological father. After receiving the DNA results, Helton visited the child a few times. Helton's visits then ceased. There was conflicting testimony at trial about whether Helton voluntarily stopped visiting the child or defendants decided against allowing further visits.

Four years after receiving the DNA results, when the child was seven years old, Helton brought suit against defendants seeking an order of filiation and parenting time with the child. By this time, the child had not visited with Helton for several years. While Helton's suit was pending, defendants married. The circuit court subsequently dismissed Helton's suit by stipulation.[2]

When the child was nine years old, Helton brought suit against defendants under §§ 7 and 13 of the newly enacted Revocation of Paternity Act, MCL 722.1437 and 722.1443. Helton submitted the DNA results to the circuit court and moved for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). The circuit court found that although the DNA results

[2] Because of Helton's delay in challenging paternity, I agree with Judge KELLY that the equitable defense of laches applies in this case.

proved that Helton was the child's biological father, the DNA results standing alone were insufficient to establish by clear and convincing evidence that defendants' acknowledgment of parentage should be set aside.

The circuit court later held a bench trial and then issued an opinion and order. In the opinion, the court stated that it had weighed the credibility of the parties and that it found Lisa's testimony more credible than Helton's testimony with regard to Helton's failure to continue a relationship with the child. The court specifically found that Helton had no parental relationship with the child. The court concluded that the evidence established that "it is not in [the child's] best interest to grant the relief requested by Plaintiff." Citing MCL 722.1443(4), the court denied Helton's request to revoke the acknowledgment of parentage. The court also denied Helton's requests for an order of filiation and parenting time.

## II. STANDARD OF REVIEW

In an action to set aside an acknowledgment of parentage, the circuit court must make factual findings concerning the sufficiency of the plaintiff's supporting affidavit. See MCL 722.1437(3); see also *In re Moiles*, 303 Mich App 59, 66-67; 840 NW2d 790 (2013), lv pending.[*] If the plaintiff's affidavit is sufficient, the circuit court must then determine whether to revoke the acknowledgment of parentage. See MCL 722.1437(3) and 722.1443(5).

We review for clear error the circuit court's factual findings on the sufficiency of the plaintiff's affidavit; we also review for clear error the circuit court's determi-

---

[*] *Moiles* was reversed in part and vacated in part after the release of this opinion. See *In re Moiles*, 495 Mich 944 (2014)—REPORTER.

nation on the revocation of the acknowledgment of parentage. See *Moiles*, 303 Mich App at 66.[3] To the extent that the circuit court made conclusions of law, those conclusions are reviewed de novo. *Id.*

### III. ANALYSIS OF THE CIRCUIT COURT'S ORDER

### A. SUFFICIENCY OF HELTON'S AFFIDAVIT[4]

A plaintiff filing an action for revocation of an acknowledgment of parentage must submit an affidavit attesting to the basis for the revocation action. MCL 722.1437(2). The plaintiff must state facts that constitute at least one of the five factors listed in Subsection (2) of MCL 722.1437:

> (a) Mistake of fact.
>
> (b) Newly discovered evidence that by due diligence could not have been found before the acknowledgment was signed.
>
> (c) Fraud.
>
> (d) Misrepresentation or misconduct.
>
> (e) Duress in signing the acknowledgment. [MCL 722.1437(2).]

In turn, Subsection (3) of the same section requires the circuit court to make a determination of the sufficiency of the plaintiff's affidavit before ruling on the revocation request:

---

[3] The *Moiles* case did not directly present the issue of the standard of review for a circuit court's determination on revocation. *Moiles*, 303 Mich App at 65-66. However, it appears from the *Moiles* decision that the clear-error standard applies to the determination. *Id.* at 66.

[4] The parties on appeal do not address the sufficiency of Helton's affidavit. We address the affidavit because a determination of the sufficiency of the affidavit is a requisite step in the analysis prescribed by MCL 722.1437. See *Moiles*, 303 Mich App at 67.

*If the court in an action for revocation under this section finds that an affidavit under subsection (2) is sufficient,* the court shall order blood or tissue typing or DNA identification profiling as required under [MCL 722.1443(5)]. The person filing the action has the burden of proving, by clear and convincing evidence, that the acknowledged father is not the father of the child. [MCL 722.1437(3) (emphasis added).]

In this case, Helton's affidavit listed three grounds for revocation: mistake of fact, misconduct, and fraud. Specifically, Helton attested that "[t]he DNA test report demonstrates that there was a mistake of fact, in that [Douglas] is not the Father." Helton further alleged that defendants engaged in misconduct or fraud by executing the acknowledgment of parentage. Helton attested that he had sexual relations with Lisa in September 2002 and that Lisa knew he might be the father of the child born in June 2003. Helton went on to attest that Lisa "induced" Douglas to execute an acknowledgment of parentage.

The circuit court did not directly rule on the sufficiency of Helton's affidavit.[5] After hearing the trial testimony, the circuit court implicitly rejected Helton's assertions of misconduct and fraud. The court found that when the child was born, both defendants believed that Douglas was the child's biological father. Although Helton disputed defendants' testimony regarding their belief that Douglas was the biological father, we defer to the circuit court's credibility determinations. MCR 2.613(C); *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). Given that defendants believed Douglas to be the child's biological father at the time they signed the affidavit of parentage, Helton's

---

[5] At the time the circuit court denied Helton's summary disposition motion, Helton had not yet submitted the affidavit. Helton submitted the affidavit in an amended complaint.

assertions of misconduct and fraud are insufficient to support his action for revocation.[6]

In contrast, Helton's assertion of mistake of fact is a sufficient basis to proceed with the revocation action. The DNA evidence supports Helton's attestation that he is the child's biological father, and the trial testimony indicates that defendants mistakenly believed that Douglas was the child's biological father. When a defendant's decision to sign an affidavit of parentage was based in part on a mistaken belief that he is the child's biological father, that mistaken belief constitutes a mistake of fact sufficient to proceed with a revocation action. *Bay Co Prosecutor v Nugent*, 276 Mich App 183, 189-190; 740 NW2d 678 (2007) (interpreting MCL 722.1011(2), now repealed and replaced by MCL 722.1437(2)). Accordingly, Helton's affidavit in this case was sufficient to allow the circuit court to proceed to determine whether to revoke the acknowledgment of parentage.

B. STANDARDS FOR REVOCATION UNDER THE REVOCATION OF PATERNITY ACT

1. THE ACKNOWLEDGMENT OF PARENTAGE ACT

The Acknowledgment of Parentage Act, MCL 722.1001 *et seq.*, confers the status of natural and legal father upon a man who executes an affidavit of parentage. *Sinicropi v Mazurek*, 273 Mich App 149, 152; 729

---

[6] We need not consider whether Helton's assertions of misconduct and fraud would be sufficient if the evidence demonstrated that defendants knew or had reason to know that Douglas was not the biological father at the time they signed the affidavit. Compare *Moiles*, 303 Mich App at 72 (affidavit of parentage attests to belief that male signatory is "natural father") with *Moiles*, 303 Mich App at 79 (WHITBECK, P.J., dissenting in part) (affidavit of parentage does not include attestation that male signator is "biological father.").

NW2d 256 (2006). The affidavit of parentage provides notice to the male signatory that he has the responsibility to support the child. MCL 722.1007(f). In addition, a valid acknowledgment of parentage may serve as the basis for child support, custody, and parenting time. MCL 722.1004. Once the acknowledgment of parentage is complete, the child has "the identical status, rights, and duties of a child born in lawful wedlock effective from birth." *Id.*

A man who executes an acknowledgment of parentage is known for legal purposes as the "acknowledged father." MCL 722.1433(1). In contrast, a man who obtains an order of filiation is known for legal purposes as an "affiliated father." MCL 722.1433(2). The existence of a valid acknowledgment of parentage by one man precludes a court from entering an order of filiation for a different man. *Sinicropi*, 273 Mich App at 164-165. In other words, a child may have only one legal father. *Id.* at 164. As a result, the circuit court in this case could not grant an order of filiation in favor of Helton unless the court first revoked defendants' acknowledgment of parentage.

### 2. BEST-INTEREST FACTORS IN § 13(4) OF THE REVOCATION OF PATERNITY ACT

In *Moiles*, 303 Mich App at 76, this Court held that a circuit court is not required to make a best-interest determination under MCL 722.1443(4) when revoking an acknowledgment.[7] Because we are bound by *Moiles*, we conclude that the circuit court in this case mistakenly

---

[7] MCL 722.1443(4) reads:

> A court may refuse to enter an order setting aside a paternity determination or determining that a child is born out of wedlock if the court finds evidence that the order would not be in the best

applied the best-interest factors in MCL 722.1443(4) when it denied Helton's request to revoke the acknowledgment of parentage.[8]

### 3. APPLICABLE STANDARDS UNDER THE REVOCATION OF PATERNITY ACT

Given that the circuit court in this case mistakenly applied the best-interest factors in the Revocation of Paternity Act, MCL 722.1443(4), we must determine whether the error requires reversal of the circuit court's decision. We first consider the controlling sections of the act.

---

interests of the child. The court shall state its reasons for refusing to enter an order on the record. The court may consider the following factors:

(a) Whether the presumed father is estopped from denying parentage because of his conduct.

(b) The length of time the presumed father was on notice that he might not be the child's father.

(c) The facts surrounding the presumed father's discovery that he might not be the child's father.

(d) The nature of the relationship between the child and the presumed or alleged father.

(e) The age of the child.

(f) The harm that may result to the child.

(g) Other factors that may affect the equities arising from the disruption of the father-child relationship.

(h) Any other factor that the court determines appropriate to consider.

[8] But for *Moiles*, I would agree with Judge KELLY that "[a]n order revoking an acknowledgment of parentage, is plainly an order 'setting aside a paternity determination' and, therefore, subject to a best-interest analysis under MCL 722.1443(4)." *Post* at 114-115. However, because the legal standards for child custody cases can be applied in this case, I see no immediate need to call for a conflict panel. An appeal in our Supreme Court will produce a more efficient resolution of these legal issues.

Nothing in the act indicates that DNA results, standing alone, are sufficient to require revocation of an acknowledgment of parentage. In § 7(3) of the act, the Legislature mandated that a circuit court order DNA testing if the court determines that the plaintiff's supporting affidavit fulfills one of the requisite factors for proceeding with a revocation action. MCL 722.1437(3). In the same subsection, the Legislature mandated that the plaintiff in a revocation action "has the burden of proving, by clear and convincing evidence, that the acknowledged father is not the father of the child." *Id.* Section 7 then addresses the administrative process for revoking an acknowledgment of parentage and requires the clerk of court to forward a revocation order to the State Registrar of the Department of Community Health. MCL 722.1437(4).

Section 7 is silent with regard to the legal standard for a circuit court to apply when deciding whether to revoke an acknowledgment of parentage. "When a statute expressly mentions one thing, it implies the exclusion of other similar things." *Moiles*, 303 Mich App at 75. If the Legislature had intended to decree that a DNA test indicating that the plaintiff is the father will result in an automatic revocation of an acknowledgment of parentage, the Legislature could have made that decree specific in the statute.[9] Absent any indica-

---

[9] An automatic revocation of parentage upon receipt of DNA results indicating that the plaintiff is the father would be contrary to the history and purpose of Michigan's laws, which require consideration of children's best interests before ordering unwarranted and traumatic disruptions in children's lives. See, e.g., MCL 712A.19b(5); MCL 722.23. Our Legislature adhered to this history and purpose in the Revocation of Paternity Act. For example, § 13(12) of the act allows circuit courts to extend, under certain circumstances, the limitations period for filing an action. MCL 722.1443(12). Once a circuit court extends the time for filing an action, the statute imposes a burden on the party filing the request for the extension to prove "by clear and convincing evidence, that granting relief

tion that a revocation order is automatic when a plaintiff submits such DNA results, we decline to interpret the statute as establishing an unsupported legal standard.

Section 13(5) of the act confirms that the legal standards for revocation of an acknowledgment of parentage require consideration of factors other than DNA results. MCL 722.1443(5). That statute reads:

> The court shall order the parties to an action or motion under this act to participate in and pay for blood or tissue typing or DNA identification profiling to assist the court in making a determination under this act. Blood or tissue typing or DNA identification profiling shall be conducted in accordance with section 6 of the paternity act, 1956 PA 205, MCL 722.716. *The results of blood or tissue typing or DNA identification profiling are not binding on a court in making a determination under this act.* [*Id.* (emphasis added); see also *Moiles*, 303 Mich App at 67.]

The Legislature's decision that DNA results are not binding on a court making a revocation determination is consistent with the predecessor revocation statute. Before the enactment of the Revocation of Paternity Act in 2012, revocation claims were governed by § 11 of the Acknowledgment of Parentage Act, MCL 722.1011 (repealed by 2012 PA 161). When enacting the new Revocation of Paternity Act, the Legislature adopted much of the language of the predecessor statute with regard to claims for revocation of acknowledgment of parentage. Compare former MCL 722.1011 with MCL 722.1437.

---

under this act will not be against *the best interests of the child considering the equities of the case.*" MCL 722.1443(13) (emphasis added).

To impose an automatic revocation would not only be contrary to the language in the Revocation of Paternity Act, but would allow the absurdity of revoking the parental status of an acknowledged father in favor of, for example, a long-absent biological father who has a history of crimes against children.

The Legislature did not, however, adopt the predecessor statute's legal standard for revocation, which stated as follows: "The party filing the claim for revocation has the burden of proving, by clear and convincing evidence, that the man is not the father and that, *considering the equities of the case, revocation of the acknowledgment is proper.*" MCL 722.1011(3), as enacted by 1996 PA 305 (emphasis added).

When the Legislature repealed the predecessor equitable legal standard for revocation claims, it replaced the equitable standard with the statutory declaration that DNA results are not binding on a court making a determination under the new act. MCL 722.1443(5). That statutory declaration gives circuit courts discretion to consider other factors when determining whether to revoke an acknowledgment of parentage. Because the Legislature did not identify the relevant factors or the legal standard that governs the circuit court's discretion, we consider analogous caselaw to determine the applicable legal standard for assessing the circuit court's decision in this case.

The legal standards in cases involving a change in child custody are well established, and our Courts have applied those standards to resolve issues similar to the issue presented in this case. The change-in-custody standards are designed to preserve stability for the child and protect against unwarranted and disruptive changes in the child's life. See *In re AP*, 283 Mich App 574, 592; 770 NW2d 403 (2009). Given that the change-in-custody standards are suited to the particular facts in this case, we assess the circuit court's decision on the basis of those factors.

This Court explained the legal standards that control a change-in-custody decision in *AP*, 283 Mich App at 600-602:

[T]he party seeking a change of custody must first establish proper cause or change of circumstances by a preponderance of evidence. The movant must make this requisite showing before the trial court determines the burden of persuasion to be applied and conducts the evidentiary hearing.

In determining the applicable burden of persuasion, the court must first determine whom the custody dispute is between. If the dispute is between the parents, the presumption in favor of the established custodial environment applies. MCL 722.27(1)(c) embodies this presumption and provides:

> (1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:

>        *  *  *

> (c) Modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age and, subject to section 5b of the support and parenting time enforcement act, 1982 PA 295, MCL 552.605b, until the child reaches 19 years and 6 months of age. The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.

As a threshold matter to determining which party will carry the burden of rebutting the presumption by clear and convincing evidence, the court is required to look into the circumstances of the case and determine whether an established custodial environment exists. A child's custodial environment is established "if over an appreciable time the child naturally looks to the custodian in that environment

for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). In making this determination, a court must also consider the "age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship . . . ." *Id.* If an established custodial environment exists with one parent and not the other, then the noncustodial parent bears the burden of persuasion and must show by clear and convincing evidence that a change in the custodial environment is in the child's best interests. We note that in circumstances in which an established custodial environment exists with both parents, the party seeking to modify the custody arrangement bears the burden of rebutting the presumption in favor of the custodial environment established with the other parent. [Citations omitted.]

Certain aspects of these legal standards require modification for application in this case. First, the Revocation of Paternity Act indicates that a mistake of fact is a change in circumstance that warrants consideration of a claim for revocation. MCL 722.1437(2)(a). In this case, Helton has established a mistake of fact regarding the biological paternity of the child. As a result, we find for purposes of this case that a change in circumstance exists. Second, with regard to the applicable burden of persuasion, the Revocation of Paternity Act places Helton (as biological father) and Douglas (as acknowledged father) in equivalent litigation postures. See MCL 722.1437(3). Accordingly, it is appropriate to use the burden of persuasion applicable to disputes between parents, which results in a presumption in favor of maintaining the child's established custodial environment. See *AP*, 283 Mich App at 600-601.

In this case, the child has an established custodial environment with defendants. To alter the established custodial environment, Helton would have to present clear and convincing evidence that a change in the custodial environment is in the child's best interests

under MCL 722.23. In a typical case, we would remand for presentation of evidence on the child's best interests under that statute. In this case, however, the record is sufficient to determine that a change in the established custodial environment would not be in the child's best interest. The statutory best-interest factors to be considered in change of custody cases are

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the vio-
lence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be
relevant to a particular child custody dispute. [MCL
722.23.]

Given that defendants have raised the child from
birth and that Helton has had little to no meaningful
interaction with the child, the record favors defendants
on Factor (a) (emotional ties between the parties and
the child) and on Factor (d) (the length of time the child
has lived in a stable, satisfactory environment, and the
desirability of maintaining continuity). Even if the
record were equivocal with regard to the remaining
factors, these two best-interest factors plainly favor
maintaining the custodial environment the child has
enjoyed thus far in life. We therefore conclude that in
this case, the circuit court properly denied Holton's
action for revocation of parentage.

Affirmed.

K. F. KELLY, J. (*concurring*). I concur that the trial
court properly denied plaintiff's request to set aside the
acknowledgment of paternity in this case. However, I
believe that *In re Moiles*, 303 Mich App 59; 840 NW2d 790
(2013),[1] was wrongly decided.* The *Moiles* Court con-
cluded that "the Legislature expressly linked a 'determi-
nation of paternity' to the section 7 of the Paternity Act,"
MCL 722.717, and that "the Legislature's use of the
phrase 'paternity determination' in MCL 722.1443(4)
specifically refers to a 'determination of paternity' under
MCL 722.717, and the resulting order of filiation." *Id.* at
75. I disagree. An order revoking an acknowledgment of

---

[1] Application for leave is currently pending.

* *Moiles* was reversed in part and vacated in part after the release of
this opinion. See *In re Moiles*, 495 Mich 944 (2014)—REPORTER.

parentage is plainly an order "setting aside a pater-
nity determination" and, therefore, subject to a best-
interest analysis under MCL 722.1443(4). Contrary
to the holding in *Moiles,* a trial court may appropri-
ately consider the relevant best-interest factors listed
in MCL 722.1443(4) under the Revocation of Pater-
nity Act (RPA), MCL 722.1431 *et seq.,* when deciding
whether to revoke an acknowledgment of parentage.
Accordingly, I concur in the lead opinion's conclusion
to affirm.

### I. THE ACKNOWLEDGMENT OF PARENTAGE ACT

The Acknowledgment of Parentage Act, MCL
722.1001 *et seq.,* provides a mechanism for establishing
paternity of a child born out of wedlock:

> If a child is born out of wedlock, a man is considered to
> be the natural father of that child if the man joins with the
> mother of the child and acknowledges that child as his child
> by completing a form that is an acknowledgment of par-
> entage. [MCL 722.1003(1).]

Further,

> [a]n acknowledgment signed under this act *establishes
> paternity,* and the acknowledgment may be the basis for
> court ordered child support, custody, or parenting time with-
> out further adjudication under the paternity act, Act No. 205
> of the Public Acts of 1956, being sections 722.711 to 722.730
> of the Michigan Compiled Laws. *The child who is the
> subject of the acknowledgment shall bear the same
> relationship to the mother and the man signing as the
> father as a child born or conceived during a marriage
> and shall have the identical status, rights, and duties
> of a child born in lawful wedlock effective from birth.*
> [MCL 722.1004 (emphasis added).]

Notably, the affidavit of parentage that the mother
and father signed in this case states that "we sign this

affidavit to *establish the paternity* for this child."
Department of Community Health Form DCH-0682
(emphasis added).

"It is no wonder that the definition [of 'child born out
of wedlock'] is the same in the Acknowledgment of
Parentage Act and the Paternity Act because the acts
*simply provide different means to the same end.* Under
the Paternity Act [MCL 722.711 *et seq.*], a party can
seek a judicial determination of paternity; under the
Acknowledgment of Parentage Act, a man and a woman
can essentially stipulate the man's *paternity.*" *Aichele v
Hodge*, 259 Mich App 146, 154-155; 673 NW2d 452
(2003) (emphasis added). " '[T]he Acknowledgment of
Parentage Act . . . *establishes paternity*, establishes the
rights of the child, and supplies a "basis for court
ordered child support, custody, or parenting time with-
out further adjudication under the [P]aternity
[A]ct . . . ." ' " *Id.* at 153, quoting *Eldred v Ziny*, 246
Mich App 142, 148; 631 NW2d 748 (2001) (second and
third alterations in original). Upon the execution of an
acknowledgment of parentage, "*paternity* was estab-
lished, and the child was in a position identical to one in
which the child was born or conceived during a mar-
riage." *Sinicropi v Mazurek*, 273 Mich App 149, 158;
729 NW2d 256 (2006). The rights of a biological father
are not superior to the rights of a man who acknowl-
edges parentage. *Id.* at 159 n 2.

I fail to see how an acknowledgment of parentage can
be anything other than a determination of the paternity
of a child born out of wedlock.

## II. THE REVOCATION OF PATERNITY ACT

The RPA[2] provides that a trial court may take a

---

[2] That an acknowledgment of parentage establishes paternity is further
supported by the title of this act itself: the Revocation of *Paternity* Act.

number of actions when presented with a properly filed
complaint under the statute. It may

> (a) Revoke an acknowledgment of parentage.
>
> (b) Set aside an order of filiation or a paternity order.
>
> (c) Determine that a child was born out of wedlock.
>
> (d) Make a determination of paternity and enter an
> order of filiation as provided for under section 7 of the
> paternity act, 1956 PA 205, MCL 722.717. [MCL
> 722.1443(2).]

The act also sets forth various definitions of "father":

> (1) "Acknowledged father" means a man who has affir-
> matively held himself out to be the child's father by
> executing an acknowledgment of parentage under the
> acknowledgment of parentage act, 1996 PA 305, MCL
> 722.1001 to 722.1013.
>
> (2) "Affiliated father" means a man who has been
> determined in a court to be the child's father.
>
> (3) "Alleged father" means a man who by his actions
> could have fathered the child.
>
> (4) "Presumed father" means a man who is presumed to
> be the child's father by virtue of his marriage to the child's
> mother at the time of the child's conception or birth. [MCL
> 722.1433(1) to (4).]

With the exception of "alleged father," the Legislature
did not distinguish these categories of father because of
some hierarchy or predominant right of one over the
other. Rather, both an "acknowledged father" and "af-
filiated father" have established paternity in alterna-
tive ways. And a "presumed father" enjoys the pre-
sumption that a child born during his marriage to the
mother is his. All three categories of father provide a
basis for court-ordered child support, custody, or
parenting time without further proceedings under the
Paternity Act.

The Legislature then set forth the various methods by which each of these fathers' paternity may be revoked:

(1) Section 7, MCL 722.1437, governs an action to set aside an acknowledgment of parentage.

(2) Section 9, MCL 722.1439, governs an action to set aside an order of filiation.

(3) Section 11, MCL 722.1441, governs an action to determine that a presumed father is not a child's father.

Again, these various methods are not based on a hierarchy of fatherhood, but are based logically on the path taken to establish paternity. For purposes of this case, MCL 722.1437 provides, in relevant part:

> (1) The mother, the acknowledged father, an alleged father, or a prosecuting attorney may file an action for revocation of an acknowledgment of parentage. An action under this section shall be filed within 3 years after the child's birth or within 1 year after the date that the acknowledgment of parentage was signed, whichever is later. The requirement that an action be filed within 3 years after the child's birth or within 1 year after the date the acknowledgment is signed does not apply to an action filed on or before 1 year after the effective date of this act.
>
> (2) An action for revocation under this section shall be supported by an affidavit signed by the person filing the action that states facts that constitute 1 of the following:
>
> (a) Mistake of fact.
>
> (b) Newly discovered evidence that by due diligence could not have been found before the acknowledgment was signed.
>
> (c) Fraud.
>
> (d) Misrepresentation or misconduct.
>
> (e) Duress in signing the acknowledgment.

(3) If the court in an action for revocation under this section finds that an affidavit under subsection (2) is sufficient, the court shall order blood or tissue typing or DNA identification profiling as required under [MCL 722.1443(5)]. The person filing the action has the burden of proving, by clear and convincing evidence, that the acknowledged father is not the father of the child.

I agree with the lead opinion that the trial court's first step should have been a determination of the sufficiency of plaintiff's affidavit. Plaintiff brought suit to revoke defendants' acknowledgment of parentage on the basis of a mistake of fact. Douglas Beaman testified that, at the time he signed the affidavit of parentage, he believed that the child was his. "Regardless of whether [the man] intended to be the father when he signed the affidavit of parentage, and whether he intended to remain the legal father after he learned that he was not the child's biological father, the evidence established that [his] decision to acknowledge paternity in this case was based, at least in part, on a mistaken belief that he was, in fact, the biological father." *Bay Co Prosecutor v Nugent*, 276 Mich App 183, 190; 740 NW2d 678 (2007).

Because plaintiff's affidavit in support of revocation was sufficient, the trial court was then required to order DNA testing. This had already been done, and the parties do not dispute that plaintiff is the child's biological father. However, MCL 722.1443(5) specifically provides that "[t]he results of blood or tissue typing or DNA identification profiling are not binding on a court in making a determination under this act."

The question becomes what discretion the trial court has to refuse to revoke the acknowledgment of parentage. In cases involving children, the focus is always on their best interests. For example, the Child Custody Act (CCA), MCL 722.21 *et seq.*, provides that "[i]f a child custody dispute is between the parents, between agen-

cies, or between third persons, the best interests of the child control." MCL 722.25(1). "[T]he statutory 'best interests' factors [in MCL 722.23] control whenever a court enters an order affecting child custody." *Harvey v Harvey*, 470 Mich 186, 187 n 2; 680 NW2d 835 (2004); *id.* at 194 ("[P]arties cannot stipulate to circumvent the authority of the circuit court in determining the custody of children. In making its determination, the court must consider the best interests of the children."). Similarly, in the context of termination-of-parental-rights cases brought under Chapter XIIA of the Probate Code, MCL 712A.1 *et seq.*, "the history of Michigan's termination-of-parental-rights statute indicates that the focus at the best-interest stage has always been on the child, not the parent," and "to determine whether termination is in the child's best interests, the focus still remains on the child." *In re Moss*, 301 Mich App 76, 87-88; 836 NW2d 182 (2013). When considering whether to terminate parental rights "it is perfectly appropriate for [the] court to refer directly to pertinent best interests factors in the Child Custody Act . . . ." *In re JS Minors*, 231 Mich App 92, 102-103; 585 NW2d 326 (1998), overruled on other grounds by *In re Trejo Minors*, 462 Mich 341 (2000).[3]

The RPA allows a court to consider a child's best interests before entering a judgment revoking paternity. MCL 722.1443(4) provides:

> A court may refuse to enter an order setting aside a paternity determination or determining that a child is born out of wedlock if the court finds evidence that the order would not be in the best interests of the child. The court

---

[3] This case is not unlike a termination-of-parental-rights case. After signing the acknowledgment of paternity, Douglas Beaman enjoyed the status of legal father. *Aichele*, 259 Mich App at 153. By revoking the acknowledgment, the trial court would effectively have terminated Beaman's parental rights.

shall state its reasons for refusing to enter an order on the record. The court may consider the following factors:[4]

\* \* \*

(d) The nature of the relationship between the child and the presumed or alleged father.

(e) The age of the child.

(f) The harm that may result to the child.

(g) Other factors that may affect the equities arising from the disruption of the father-child relationship.

(h) Any other factor that the court determines appropriate to consider.

However, the Court in *Moiles* wrongly concluded that these best-interest factors were inapplicable to a case involving revocation of an acknowledgment of parentage. The Court explained its rationale:

Moiles contends that an acknowledgment of parentage *is* a paternity determination because it establishes a child's paternity. We disagree, and conclude that the trial court correctly determined that an acknowledgment of parentage is not a paternity determination as that term is used in the statute, and therefore, that MCL 722.1443(4) did not apply. An acknowledgment of parentage does establish the paternity of a child born out of wedlock and does establish the man as a child's natural and legal father. However, in MCL 722.1443(2)(d), the Legislature expressly linked a "determination of paternity" to § 7 of the Paternity Act [MCL 722.717]. We conclude that the Legislature's use of the phrase "paternity determination" in MCL 722.1443(4) specifically refers to a "determination of paternity" under MCL 722.717, and the resulting order of filiation.

When a statute expressly mentions one thing, it implies the exclusion of other similar things. In this case, while

---

[4] Factors (a) through (c) are inapplicable to this case because those factors deal only with "presumed fathers."

MCL 722.1443 generally applies to any of the actions listed
in subsection (2), including the revocation of an acknowl-
edgment of parentage, subsection (4) specifically addresses
only paternity determinations and determinations that a
child is born out of wedlock. These are only two of the four
types of actions that the trial court may take under the
Revocation of Paternity Act. Had the Legislature wanted
the trial court to make a determination of the child's best
interests relative to revoking an acknowledgment of par-
entage, it could have included language to that effect. But
it did not.

Therefore, we conclude that MCL 722.1443(4) did not
require the trial court to make a best-interest determina-
tion before revoking Moiles's acknowledgment of parent-
age. [*Moiles*, 303 Mich App at 75-76 (citations omitted).]

However, as I have previously indicated, an acknowl-
edgment of parentage establishes paternity. Adhering to
the principles of statutory construction, I would hold
that "setting aside a paternity determination" includes
the situation at bar in which an alleged father seeks to
revoke an acknowledgment of parentage. *Moiles* pre-
cludes a consideration of the best-interest factors in
MCL 722.1443(4) by holding that an acknowledgment
of parentage is not a paternity determination. Because
I strongly disagree with that misstatement of law, I
believe that a conflict panel should be convened to
resolve the issue. MCR 7.215(J).[5]

The *Moiles* holding that precludes consideration of
the best-interest factors in MCL 722.1443(4) leads to
the conundrum we have before us. If a trial court
cannot consider those factors, but DNA evidence is not
"binding on a court in making a determination" on
whether to revoke an acknowledgment of parentage,

[5] The lead opinion appears to acknowledge that *Moiles* may be flawed.
*Ante* at 107 n 8.

MCL 722.1443(5), then what can the court consider?
What discretion may it exercise?

The lead opinion writes:

> When the Legislature repealed the predecessor equitable legal standard for revocation claims, it replaced the equitable standard with the statutory declaration that DNA results are not binding on a court making a determination under the new act. MCL 722.1443(5). That statutory declaration gives circuit courts discretion to consider other factors when determining whether to revoke an acknowledgment of parentage. Because the Legislature did not identify the relevant factors or the legal standard that governs the circuit court's discretion, we consider analogous caselaw to determine the applicable legal standard for assessing the circuit court's decision in this case. [*Ante* at 110.]

In an attempt to provide trial courts with some guidance, the lead opinion invokes the process under the CCA for a change in custody.

I agree with the lead opinion that MCL 722.1443(5), which provides that DNA test results are not binding on a trial court, indicates the Legislature's intent to provide trial courts discretion in these cases. However, I also strongly believe that the Legislature, by including the best-interest factors in MCL 722.1443(4), provided the necessary framework for trial courts to exercise that discretion. I therefore disagree with the lead opinion's conclusion that "the Legislature did not identify the relevant factors or the legal standard that governs the circuit court's discretion . . . ." *Ante* at 110. On the contrary, I believe that the Legislature has left no guess work under the RPA and that there is no need to resort to the CCA for guidance.

As the lead opinion observes, before the RPA was enacted, a section of the Acknowledgment of Parentage Act addressed the revocation of an acknowledgment:

> If the court finds that the affidavit is sufficient, the
> court *may* order blood or genetic tests at the expense of the
> claimant, or may take other action the court considers
> appropriate. The party filing the claim for revocation has
> the burden of proving, by clear and convincing evidence,
> that the man is not the father and that, *considering the
> equities of the case*, revocation of the acknowledgment is
> proper. [MCL 722.1011(3), as enacted by 1996 PA 305,
> repealed by 2012 PA 161 (emphasis added).]

Now the RPA controls such a determination and, rather than a vague reference to the "equities of the case," the RPA lays out specific interests for the trial court to consider in MCL 722.1443(4). I would specifically note that Factor (g) eliminates the vagueness of the previous statute by directing a trial court to specifically consider "[o]ther factors that may affect the equities arising from the disruption of the father-child relationship." MCL 722.1443(4)(g). I believe that the relevant factors listed in MCL 722.1443(4) are to be considered in any action brought under the RPA regardless of how paternity was established. Thus, while I agree with the lead opinion that a child's best interests must be considered, I believe that the best-interest factors set forth in the RPA, and not those found in the CCA, control.

I applaud the lead opinion's attempt to wade through this issue. It is clear that we agree that a child's best interests must inform a trial court's decision whether to revoke paternity. But *Moiles* precludes trial courts from considering the best-interest factors set forth in MCL 722.1443(4), leaving courts to guess what the proper framework should be. Under those circumstances, the lead opinion's reference to the CCA is not wholly illogical. However, *Moiles* is wrong and we should say as much. We ought to convene a conflict panel rather than defer to the flawed analysis in *Moiles*.

### III. CONSTITUTIONAL CONSIDERATIONS

While the dissent takes comfort in the fact that this is *only* a revocation-of-paternity case and that a trial court would eventually apply the best-interest factors under the CCA if plaintiff pursued custody further, that position overlooks the fact that the child in this case will be deprived of her fundamental right to maintain a relationship with Beaman, who is her legal father.

" '[A] child's right to family integrity is concomitant to that of a parent[.]' " *O'Donnell v Brown*, 335 F Supp 2d 787, 810 (WD Mich, 2004), quoting *Wooley v Baton Rouge*, 211 F3d 913, 923 (CA 5, 2000). Parents not only have the right to the care and custody of their children, but children also enjoy "parallel rights to the integrity of their family." *In re Anjoski*, 283 Mich App 41, 56; 770 NW2d 1 (2009). Similarly, a child also has a due process liberty interest in his or her family life. *In re Clausen*, 442 Mich 648, 686; 502 NW2d 649 (1993).

In *Grimes v Van Hook-Williams*, 302 Mich App 521, 537; 839 NW2d 237 (2013), we noted that

> the United States Supreme Court has never determined whether a child has a liberty interest, symmetrical with that of her parent, in maintaining her filial relationship. And even if children do have such a constitutional right, it is almost certainly the right to maintain a filial relationship with their *legal* parents. Under the law as it exists in Michigan today, [the alleged father] is simply not one of the child's legal parents. [Quotation marks and citations omitted.]

In executing the acknowledgment of parentage, Beaman established himself as the child's *legal* father. *Sinicropi*, 273 Mich App at 160. Therefore, the child's constitutional rights are necessarily implicated.

That is not to say that the right to a continued relationship with a legal parent is absolute. However, in directing that trial courts may *not* consider the best-interest factors set forth in MCL 722.1443(4), *Moiles* produced the unintended consequence of categorizing children by affording protection to children whose fathers' paternity is either presumed as a result of marriage or established under the Paternity Act and declining such protection to children whose fathers have established paternity through an acknowledgment of parentage. I believe that the best-interest factors in MCL 722.1443(4) apply in all actions brought under the RPA.

Moreover, the mere fact that a child's custody arrangement may not immediately change upon revocation of paternity does not lessen the *legal* consequence of setting aside paternity. If a trial court sets aside paternity and enters an order recognizing a child's biological father as the child's legal father, the biological father will be entitled to all the rights accorded thereto. It is not enough to view an action under the RPA as a mere prelude to a custody battle. If that were the case, then the best-interest factors in the CCA would ensure that the child would maintain permanence and stability. But there are immediate legal ramifications that result upon revoking paternity. What would happen, for example, if the mother were to die? Assuming Beaman's acknowledgment of parentage is set aside, he would now have to seek custody as a third party and there is no guarantee that he would succeed or even have standing. See MCL 722.26c; *Anjoski*, 283 Mich App 41. The child enjoys a legal relationship with Beaman, and that relationship should not be destroyed absent a finding that it is in the child's best interests, using the best-interest factors in MCL 722.1443(4).

IV. LACHES AS AN EQUITABLE DEFENSE

Finally, I believe that the equitable defense of laches applies in this case and that plaintiff should have been precluded from bringing this action nine years after the child's birth. As such, it provides an additional basis to affirm.

> Laches is an affirmative defense based primarily on circumstances that render it inequitable to grant relief to a dilatory plaintiff. The doctrine of laches is triggered by the plaintiff's failure to do something that should have been done under the circumstances or failure to claim or enforce a right at the proper time. "The doctrine of laches is founded upon long inaction to assert a right, attended by such intermediate change of conditions as renders it inequitable to enforce the right." But "[i]t has long been held that the mere lapse of time will not, in itself, constitute laches." "The defense, to be raised properly, must be accompanied by a finding that the delay caused some prejudice to the party asserting laches and that it would be inequitable to ignore the prejudice so created." The defendant bears the burden of proving this resultant prejudice. [*Attorney General v PowerPick Player's Club of Mich, LLC*, 287 Mich App 13, 51; 783 NW2d 515 (2010) (citations omitted).]

"If a plaintiff has not exercised reasonable diligence in vindicating his or her rights, a court sitting in equity may withhold relief on the ground that the plaintiff is chargeable with laches" and may simply "leave[] the parties where it finds them." *Knight v Northpointe Bank*, 300 Mich App 109, 114; 832 NW2d 439 (2013). "This is so because equity will not lend aid to those who are not diligent in protecting their own rights." *Id.*

Plaintiff suspected that he was the child's father from the start of the mother's pregnancy. In fact, plaintiff testified that he, the mother, and Beaman all sat down during the pregnancy to discuss what would

happen in the event that plaintiff was the biological father. Nevertheless, plaintiff failed to file a notice of intent to claim paternity, as is allowed under MCL 710.33(1) ("Before the birth of a child born out of wedlock, a person claiming under oath to be the father of the child may file a verified notice of intent to claim paternity . . . ."). A DNA test was administered in 2003 within two months after the child's birth, but because plaintiff allegedly could not afford the fee, the results were not revealed until three years later in 2006. Plaintiff's first attempt to establish paternity was in 2010 when the child was seven years old. That action was dismissed because defendant and Beaman got married and, consequently, plaintiff was deprived of standing. Thus, from the time before the child was born until she was seven years old, plaintiff took absolutely no action to establish paternity. He sat on his rights, with the resultant prejudice being that the child lived in a familial and custodial environment with her mother and Beaman, *her legal father*, for nine years.

MCL 722.1437(1) provides that an individual bringing an action to revoke an acknowledgment of parentage must do so "within 3 years after the child's birth or within 1 year after the date that the acknowledgment of parentage was signed, whichever is later." However, the Legislature further provided that "[t]he requirement that an action be filed within 3 years after the child's birth or within 1 year after the date the acknowledgment is signed does not apply to an action filed on or before 1 year after the effective date of this act." While plaintiff's action under the RPA was timely, the fact that a party brings a claim within the limitations period does not necessarily defeat a laches defense. *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 457; 761 NW2d 846 (2008) ("[L]aches may bar a legal claim even if the statutory period of limitations has not yet expired.").

I do not believe that in passing the RPA the Legislature intended to defeat the common-law defense of laches. In rejecting the idea that the doctrine of avoidable consequences was abrogated by the adoption of comparative negligence, this Court recently explained:

> "The common law remains in force until 'changed, amended or repealed.' " "There is no question that both [our Supreme] Court and the Legislature have the constitutional power to change the common law." However, "[w]e will not lightly presume that the Legislature has abrogated the common law. Nor will we extend a statute by implication to abrogate established rules of common law." Absent "a contrary expression by the Legislature, well-settled common-law principles are not to be abolished by implication . . . ." "Rather, the Legislature should speak in no uncertain terms when it exercises its authority to modify the common law." [*Braverman v Granger*, 303 Mich App 587, 596-597; 844 NW2d 485 (2014) (citations omitted) (alterations in original.]

Plaintiff had the ability to establish paternity during the pregnancy and also in the seven years following the child's birth before defendant married Beaman. I find the delay in doing so inexcusable and that the equitable defense of laches applies.

I agree that the matter should be affirmed, albeit for different reasons.

SAWYER, P.J. (*dissenting*). I respectfully dissent from both Judge O'CONNELL's view in the lead opinion that the trial court properly considered the best-interest factors and Judge KELLY's view in her concurrence that *In re Moiles*, 303 Mich App 59; 840 NW2d 790 (2013), lv pending,* was incorrectly decided. I believe that *Moiles* was correctly decided and would reverse the decision of

---

* *Moiles* was reversed in part and vacated in part after the release of this opinion. See *In re Moiles*, 495 Mich 944 (2014)—REPORTER.

the trial court and remand with instructions to enter an order revoking the acknowledgment of parentage.

The Revocation of Paternity Act, MCL 722.1431 *et seq.*, addresses three related, but separate, situations: setting aside an acknowledgment of paternity, setting aside an order of filiation, and the determination that a presumed father is not a child's father. Each of these situations is governed by a separate section of the act. MCL 722.1435. Because this case involves setting aside an acknowledgment of parentage, MCL 722.1435(1) directs us to § 7 of the act, MCL 722.1437.

MCL 722.1437(2) provides that an action for revocation of an acknowledgment of parentage may be pursued for a number of reasons, including a mistake of fact. Under Subsection (3), the burden lies with the petitioner to establish by clear and convincing evidence that the acknowledged father is not the father of the child. MCL 722.1437(3). Nothing in MCL 722.1437 directs the trial court to consider the best interests of the child in determining whether the petitioner has met that burden of proof. In the case at bar, not only do defendants stipulate that plaintiff is the biological father of the child, the trial court specifically found that plaintiff had met his burden to establish that fact by clear and convincing evidence. Rather, the trial court declined to enter an order setting aside the acknowledgment of parentage because it was not in the child's best interests.

*Moiles* presented a similar situation whereby a man who was not the child's biological child, Moiles, had signed an acknowledgment of parentage and, later, an action was filed to revoke that acknowledgment of parentage. Moiles had argued in the trial court, and then on appeal, that the trial court should have considered the best interests of the child before deciding

whether to revoke Moiles's acknowledgment of parentage despite the fact that he was not the biological father of the child. This Court rejected that argument, concluding that the best interests of the child only applies when the trial court is faced with setting aside a determination of paternity or a determination that a child is born out of wedlock, but not to the decision of whether to set aside an acknowledgment of parentage. I agree with the reasoning of the *Moiles* majority.

The reference to the consideration of the best interests of the child is found in MCL 722.1443(4), which reads in part as follows:

> A court may refuse to enter an order setting aside a paternity determination or determining that a child is born out of wedlock if the court finds evidence that the order would not be in the best interest of the child.

As the *Moiles* majority explained, this provision is inapplicable to the revocation of an acknowledgment of parentage:

> Moiles contends that an acknowledgment of parentage *is* a paternity determination because it establishes a child's paternity. We disagree, and conclude that the trial court correctly determined that an acknowledgment of parentage is not a paternity determination as that term is used in the statute, and therefore, that MCL 722.1443(4) did not apply. An acknowledgment of parentage does establish the paternity of a child born out of wedlock and does establish the man as a child's natural and legal father. However, in MCL 722.1443(2)(d), the Legislature expressly linked a "determination of paternity" to § 7 of the Paternity Act. We conclude that the Legislature's use of the phrase "paternity determination" in MCL 722.1443(4) specifically refers to a "determination of paternity" under MCL 722.717, and the resulting order of filiation.
>
> When a statute expressly mentions one thing, it implies the exclusion of other similar things. In this case, while

> MCL 722.1443 generally applies to any of the actions listed in subsection (2), including the revocation of an acknowledgment of parentage, subsection (4) specifically addresses only paternity determinations and determinations that a child is born out of wedlock. These are only two of the four types of actions that the trial court may take under the Revocation of Paternity Act. Had the Legislature wished the trial court to make a determination of the child's best interests relative to revoking an acknowledgment of parentage, it could have included language to that effect. But it did not. [*Moiles*, 303 Mich App at 75-76 (citations omitted).]

Indeed, the first definition of "determination" in *Black's Law Dictionary* (5th ed) is "[t]he decision of a court or administrative agency."

Both of my colleagues acknowledge that *Moiles* is controlling here. Judge KELLY disagrees with *Moiles* and would invoke a conflict panel to overrule it. She reaches this conclusion on the basis of the argument that, because an acknowledgment of parentage establishes paternity, it must be a determination of paternity. For the reasons discussed above, I do not agree. Because there was no decision by a court, there was no determination of paternity; rather, there was merely an acknowledgment of such. My colleague's reasoning overlooks the fact that paternity can be established by means other than a determination.

Turning to the lead opinion, which, while acknowledging that *Moiles* is controlling, reaches the conclusion that despite the decision in *Moiles*, the trial court can apply the best-interest factors, albeit for a different reason. The lead opinion simultaneously concludes that the trial court erred in applying the best-interest factors and that this case must be resolved by considering the best-interest factors. This essentially turns this case into a child custody dispute rather than a revocation of paternity dispute.

First, the lead opinion notes that, under MCL 722.1443(5), the results of DNA testing are not binding on the trial court. Then the learned judge's opinion takes a logical leap to the conclusion that this must somehow create discretion in the trial court to consider other factors in determining whether to revoke an acknowledgment of parentage. I disagree. I think the clearer and more obvious observation is that the Legislature merely did not want the trial court's factual determination to be limited by the DNA test results. That is, it allows for the possibility that the trial court, in making the factual determination regarding who is the biological father of the child, may be presented with a situation in which the DNA test results do not provide clear and convincing evidence that the acknowledged father is not the father of the child and, therefore, should not be deemed controlling.[1]

The shortcomings of the lead opinion are underscored by two additional factors. First, as the lead opinion itself points out, the now-repealed provision in the Acknowledgment of Parentage Act that dealt with revocation of an acknowledgment of parentage, former MCL 722.1011, included a provision that a party seeking to revoke an acknowledgment of parentage[2] "has

---

[1] For example, the trial court may have reason to believe that the test results are not accurate. Or perhaps the difference in the results between the two potential fathers is sufficiently small that the trial court is unwilling to merely determine paternity on the basis of whose results gave the slightly higher percentage. Or, for that matter, the results may suggest that neither man is the actual father, in which case the DNA results should not compel the court to rule in favor of the man who has the higher, though still small, likelihood of being the father.

[2] It is worth noting that under former MCL 722.1011(1), a man claiming to be the biological father of the child could not file the action to revoke the acknowledgment of parentage. It was to be filed by the mother, the man who signed the acknowledgment, or the prosecuting attorney.

the burden of proving, by clear and convincing evidence, that the man is not the father and that, *considering the equities of the case,* revocation of the acknowledgment is proper." MCL 722.1011(3), as enacted by 1996 PA 305, repealed by 2012 PA 161 (emphasis added). The lead opinion argues that the Legislature replaced this "equitable standard" with "the statutory declaration that DNA results are not binding on a court making a determination under the new act." *Ante* at 110. This is a tenuous argument at best. The provision of the new act that most closely relates to former MCL 722.1011(3) is MCL 722.1437(3), which establishes the clear-and-convincing-evidence burden (without the reference to the equities of the case), rather than MCL 722.1443(5), which establishes the principle that DNA results are not binding on the trial court. Moreover, the lead opinion ignores the principle of statutory construction that "when a statute is repealed and another statute is enacted that covers the same subject area, a change in wording is presumed to reflect a legislative intent to change the statute's meaning." *People v Henderson*, 282 Mich App 307, 328; 765 NW2d 619 (2009). Thus, the proper interpretation to be given to the Legislature's omission of the phrase "considering the equities of the case" from the new statute is that the Legislature no longer wished for the equities to be considered.

And this leads to the second problem with the lead opinion, which is that the statute does not, as the opinion acknowledges, "identify the relevant factors or the legal standard that governs the circuit court's discretion" in determining whether to revoke an acknowledgment of parentage. *Ante* at 110. Rather, the lead opinion goes on to supply that standard by looking to the child custody best-interest factors, with nothing in the Revocation of Paternity Act to supply a basis for those standards.

In sum, we are presented with two possible statutory interpretations. The first is fairly direct and simple: in the context of revoking an acknowledgment of parentage, the Legislature decided to remove consideration of the equities of the case and leave it to a factual determination of the trial court, placing a burden on the party seeking the revocation to establish by clear and convincing evidence that the acknowledged father is not, in fact, the actual father of the child, with the recognition that the trial court, in making its factual findings, is not compelled to accept the DNA results in every case.

The second interpretation is to follow the lead opinion's wanderings through the statute, ignoring that which the Legislature chose to delete and then finding its way into the Child Custody Act in order to supply a standard for the exercise of discretion when the Legislature has not chosen to grant discretion to the trial court. This interpretation has no support in the statute itself. Therefore, I choose the first.

But I should also recognize that the lead opinion's conclusion overlooks a very obvious point. After reviewing the best-interest factors, it notes that "these two best-interest factors plainly favor maintaining the custodial environment the child has enjoyed thus far in life." *Ante* at 114. Not only does the lead opinion err by turning this revocation-of-paternity case into a child custody case, it overlooks the fact that this is only a revocation-of-paternity case and not a child custody case. That is, merely because the acknowledgment of parentage is revoked and plaintiff becomes the child's legal father, that does not mean that there will be a change of custody. If, after establishing paternity, plaintiff chooses to pursue custody, the trial court will look to the custody act and the best-interest factors to determine whether a change in custody from the mother to plaintiff is warranted.

While it would be premature for me to address that question, I have no particular reason to disagree with my colleagues' analysis of that question and, assuming that their analysis is correct that the best-interest factors favor the mother, the trial court would presumably leave custody with the mother. All that will have changed is who is recognized as the child's legal father. And that presumably would reflect the intent of the Legislature in enacting the Revocation of Paternity Act in the first place: to allow biological fathers to establish their status as a child's legal father despite the fact that another man erroneously signed an acknowledgment of paternity.

Finally, as for resolving this case on the basis of laches, while defendants did plead laches as an affirmative defense, the trial court did not resolve this case on that ground. And more importantly, defendants did not raise laches in their brief on appeal. I am not inclined to raise it *sua sponte*.

For these reasons, I conclude that *Moiles* was correctly decided, and I would follow it and conclude that the trial court erred by considering the best-interest factors. Because this is an acknowledgment-of-parentage case and plaintiff has established by clear and convincing evidence, as the trial court and the parties agree, that he is the child's biological father, I would reverse the trial court and remand the matter for entry of an order revoking the existing acknowledgment of paternity and an order of filiation establishing plaintiff as the child's father.