# STATE OF MICHIGAN

# COURT OF APPEALS

JEREMY PHILLIP JONES,

        Plaintiff-Appellee,

v

SHARON DENISE JONES,

        Defendant-Appellant.

FOR PUBLICATION
June 22, 2017
9:00 a.m.

No. 334937
Barry Circuit Court
Family Division
LC No. 15-000542-DM

Before: SWARTZLE, P.J., and SAAD and O'CONNELL, JJ.

SAAD, J.

Defendant appeals the judgment of divorce that the trial court entered. This case raises an issue of first impression of whether the Revocation of Paternity Act (RPA), MCL 722.1431 *et seq.*, is applicable to a child born through in vitro fertilization (IVF). For the reasons provided herein, we hold that the RPA does apply in these circumstances, and we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS

The parties' testimony was somewhat unclear regarding specific dates. Defendant and plaintiff married in 1998. On November 2, 2001, their son, DJ, was born. The parties lived together until approximately 2008, with the exception of one month when defendant and DJ lived apart from plaintiff. Around 2008, plaintiff moved to Bridgman in Berrien County to be closer to the Native American tribe to which he belonged, and defendant and DJ moved to Detroit. The parties maintained separate residences, but plaintiff would visit defendant approximately once a week through 2012 or 2014.

On November 18, 2013, defendant gave birth to a daughter, AJ, conceived by using assisted reproductive technology (ART)—in particular, IVF. The parties disputed the extent of plaintiff's involvement in AJ's conception. Plaintiff testified that he revoked his consent to the procedures in January 2010. Though he may not have provided defendant with a copy of the revocation, he testified that defendant was aware of his revocation. Plaintiff further testified that AJ's conception involved an anonymous sperm donor. Although plaintiff conceded to driving defendant to a few appointments, he believed that these appointments were for other purposes, such as harvesting eggs for future use, rather than defendant actively attempting to conceive a child.

-1-

In 2015, plaintiff filed the instant suit for divorce. Plaintiff alleged that AJ was born out of wedlock and that, consequently, he was not AJ's legal father. The parties also disputed the custody and support of DJ. During trial, the parties entered into a settlement, which stipulated that plaintiff was not AJ's legal father and the trial court accepted the stipulation.[1]

## II. ANALYSIS

### A. APPLICABILITY OF THE RPA

On appeal, defendant argues that the trial court erred when it found that plaintiff was not AJ's legal father. We disagree.

Ordinarily, the fact that a party entered into a settlement precludes appellate review. See *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001) ("A party cannot stipulate a matter and then argue on appeal that the resultant action was error."). However, our courts have limited the enforcement of settlement agreements when they concern the well-being of children. See *Koron v Melendy*, 207 Mich App 188, 191; 523 NW2d 870 (1994) (stating that a trial court is not bound to accept the parties' agreement to child custody but can accept it if it is in the child's best interests); *Johns v Johns*, 178 Mich App 101, 106; 443 NW2d 446 (1989) (holding that plaintiff father who had acted as father to the children at issue for 15 years could not disclaim paternity via stipulation during a custody battle). By revoking plaintiff's paternity, the settlement agreement at issue completely eliminates any right AJ may have to seek support from plaintiff. Accordingly, despite the parties' settlement agreement, we will analyze whether the trial court properly terminated plaintiff's paternity under the RPA.

This Court reviews a trial court's factual findings in proceedings under the RPA for clear error. *Demski v Petlick*, 309 Mich App 404, 431; 873 NW2d 596 (2015). "The trial court has committed clear error when this Court is definitely and firmly convinced that it made a mistake." *Id.* (quotation marks and citation omitted). This Court reviews de novo the interpretation and application of statutory provisions. *Parks v Parks*, 304 Mich App 232, 237; 850 NW2d 595 (2014).

"When interpreting a statute, a court must give effect [to] the Legislature's intent." *Id.* To determine the legislative intent, this Court first looks to the language of the statute itself and, if the language is unambiguous, "it must be enforced as written." *Title Office, Inc v Van Buren Co Treasurer*, 469 Mich 516, 519; 676 NW2d 207 (2004) (quotation marks and citation omitted). Words of statutes are given their plain and ordinary meanings, while legal terms are construed according to their legal meanings. *Lech v Huntmore Estates Condo Ass'n (On Remand)*, 315 Mich App 288, 290; 890 NW2d 378 (2016). Statutes must be read as a whole, and this Court may not read statutory provisions in isolation. *Milot v Dep't of Transp*, 318 Mich App 272, 278; ___ NW2d ___ (2016).

---

[1] At the conclusion of trial, the trial court also awarded sole legal and physical custody of DJ to defendant.

The RPA provides the procedures for courts to determine the paternity of children in certain situations. Although defendant argues that the RPA is not the proper vehicle by which to determine AJ's paternity, the RPA expressly "governs an action to determine that a presumed father is not a child's father," MCL 722.1435(4), and this is the precise situation before us. The RPA defines a presumed father as "a man who is presumed to be the child's father by virtue of his marriage to the child's mother at the time of the child's conception or birth." MCL 722.1433(e). Indeed, presuming paternity by the husband when a married couple has undergone ART to conceive is not contrary to the purpose of the RPA. In fact, it is consistent with the Legislature's general policy of recognizing the legitimacy of a child born through ART to a married couple. See, e.g., MCL 333.2824(6); MCL 700.2114(1)(a). Thus, as a starting point, plaintiff is the presumed father by virtue of his marriage to defendant at the time AJ was conceived and born, and the RPA is indeed the statute that applies to determine paternity.

The RPA provides that a presumed father who files for divorce may be declared to not be a child's father as follows:

> If a child has a presumed father, a court may determine that the child is born out of wedlock[2] for the purpose of establishing the child's paternity if an action is filed by the presumed father within 3 years after the child's birth or if the presumed father raises the issue in an action for divorce or separate maintenance between the presumed father and the mother. The requirement that an action be filed within 3 years after the child's birth does not apply to an action filed on or before 1 year after the effective date of this act. [MCL 722.1441(2) (emphasis added).]

Here, based on the testimonial evidence, the trial court found that plaintiff made no genetic donation in the IVF process and that AJ was not a product of the parties' marriage. The trial court's findings are supported by the record and are not clearly erroneous. Plaintiff testified that he revoked his consent to defendant's IVF procedures in January 2010 and provided a copy of his revocation of consent to the trial court. Although plaintiff allegedly failed to provide a copy of the revocation of consent to defendant, plaintiff testified that defendant was aware of his revocation because the first fertility center they used subsequently refused to give defendant treatment. At the second fertility center utilized by defendant, the parties signed a financial waiver which indicated that, for financial purposes, defendant should be treated as an unmarried woman. Further, although defendant testified that plaintiff was aware of her ongoing efforts to become pregnant, she also testified that she only told plaintiff of the procedures to which he drove her. Importantly, the parties lived in separate residences on opposite sides of the state since approximately 2008. And, finally, it is significant that the parties entered into a settlement

---

[2] We note that the RPA does not define the term "born out of wedlock"; however, the commonly understood meaning is reflected in the definition supplied by the Paternity Act, MCL 722.711 *et seq.*, which provides that one aspect of the definition is to be "born or conceived during a marriage but not the issue of that marriage," MCL 722.711(a). It is this definition that is relevant here.

that specifically provided that plaintiff is not the father. While this settlement may not be controlling, it is nonetheless substantial evidence on the matter in issue. In light of this evidence, we are not left with a definite and firm conviction that the trial court clearly erred when it found that AJ was not issue of the marriage and therefore, was born out of wedlock under the RPA.

If a trial court determines that a child was born out of wedlock, the court nonetheless may refuse to enter such an order if it would not be in the child's best interests to do so. MCL 722.1443(4) provides that

> [a] court may refuse to enter an order . . . determining that a child is born out of wedlock if the court finds evidence that the order would not be in the best interests of the child. The court shall state its reasons for refusing to enter an order on the record. The court may consider the following factors:
>
> (a) Whether the presumed father is estopped from denying parentage because of his conduct.
>
> (b) The length of time the presumed father was on notice that he might not be the child's father.
>
> (c) The facts surrounding the presumed father's discovery that he might not be the child's father.
>
> (d) The nature of the relationship between the child and the presumed or alleged father.
>
> (e) The age of the child.
>
> (f) The harm that may result to the child.
>
> (g) Other factors that may affect the equities arising from the disruption of the father-child relationship.
>
> (h) Any other factor that the court determines appropriate to consider.

Here, as defendant acknowledges, the trial court stated that it reviewed the best-interest factors under MCL 722.1443(4) and found that they favored approving the settlement. Defendant notes that the court did not make any explicit findings with respect to any specific factor, but MCL 722.1443(4) is quite clear on this point—it only requires such findings and reasons to be made on the record when it *refuses* to enter the order, i.e., when it does not alter the presumed father's status.[3] Therefore, because the trial court ultimately did alter the presumed father's status, the

---

[3] To be clear, a court is required to always perform a best-interest evaluation under MCL 722.1443(4). Otherwise, the court would not be aware that the best interests indicate that the revocation should not be granted. Cf. *Helton v Beaman*, 497 Mich 1001 (2015) (stating that any order " 'setting aside a paternity determination' . . . is subject to a best interest analysis under

court clearly was not required to express its particular reasons. In any event, our review of the record does not leave us with a definite and firm conviction that the trial court made a mistake when it found that the best-interest factors favored approving the settlement. Most importantly, there is no bond between plaintiff and AJ, and there are no signs that any bond will materialize in the future, as plaintiff has never demonstrated any desire to connect in anyway with AJ, let alone as her father. The court heard the testimony and accordingly made its findings based on the best interests of the child, as required by the statute.[4]

We further take this moment to address a concern defendant raises on appeal. Defendant opines that to allow the RPA to govern situations where a child was born through IVF with the use of an anonymous sperm donor would allow any husband to easily revoke paternity later, regardless of the husband's intention and involvement during the IVF process. We believe that the best-interest factors of MCL 722.1443(4) already provide sufficient safeguards for such situations. In particular, MCL 722.1443(4)(a) allows a court to consider "[w]hether the presumed father is estopped from denying parentage because of his conduct." If a husband had full knowledge that his wife was attempting to get pregnant through IVF with an anonymous sperm donor and supported the process, it would be a simple matter for a court to find that the best interests would favor not revoking paternity under these circumstances. However, this is quite different from the facts in this case, where the husband and wife had been separated for

_____

MCL 722.1443(4)." That being said, the court is only required to "state its reasons *for refusing to enter an order* on the record." MCL 722.1443(4) (emphasis added). The Legislature's view here is understandable because at this point in the analysis, a court would have already found that the child is not the issue of the presumptive father. Hence, if a court rules that paternity remains despite the fact that the child is not the issue of the presumptive father, express reasons need to be placed on the record because of the unusual nature of the "conflicting" rulings.

[4] We reject defendant's argument that a court must find that the best-interests factors must be proven by clear and convincing evidence in order to revoke paternity. We note that nothing in the statute indicates that this level of proof is necessary. And the case defendant relies on, *Demski*, 309 Mich App at 431, did not suggest that this level of proof was necessary either. In *Demski*, the Court simply noted that while the trial court used this elevated evidentiary standard, the statute did not require it. *Id.* Hence, when a statute does not provide an evidentiary burden, the default "preponderance of the evidence" is utilized. See *Residential Ratepayer Consortium v Pub Serv Comm*, 198 Mich App 144, 149; 497 NW2d 558 (1993). Further, defendant's reliance on intestate succession, MCL 700.2114(1), and child custody matters is misplaced, as there is no question that this is neither an intestate succession nor a custody determination, see *Helton v Beaman*, 304 Mich App 97, 135; 850 NW2d 515 (2014) (SAWYER, J., dissenting) ("[T]his is only a revocation-of-paternity case and not a child custody case."). Indeed, the child's custody here will not change because the child had custody with defendant before the entry of the court's order and the child will continue to do so afterward. See *Brown v Loveman*, 260 Mich App 576, 585; 680 NW2d 432 (2004) ("When a modification of custody . . . would change the established custodial environment of a child, the moving party must show by clear and convincing evidence that it is in the child's best interest."). We note that defendant does not claim that any constitutional concerns require an elevated evidentiary burden; thus, we decline to address that potential.

many years and lived separate lives on opposite sides of the state, the husband expressly revoked his consent to the IVF procedure, the husband had no meaningful contact or bond with the child after the child was born, and the parties already stipulated in court proceedings that plaintiff is not the father.

## B. FAILURE OF WRITTEN ORDER TO COMPORT WITH ORAL PRONOUNCEMENTS

Defendant also argues that the trial court erred when it entered a judgment proposed by plaintiff under MCR 2.602(B)(3) that did not comport with the court's oral ruling at trial. Specifically, defendant argues that the judgement provides that *defendant* is responsible for all transportation related to plaintiff's exercise of parenting time with DJ, when the court stated previously that it was *plaintiff* who was responsible. Defendant also notes that the proposed order misspelled AJ's name and used an incorrect birthdate. We agree.

Whether the judgment was properly entered pursuant to MCR 2.602(B) involves the interpretation and application of court rules, which is a question of law that this Court reviews de novo. *ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 526; 672 NW2d 181 (2003). "[A]n error in a ruling or order, or an error or defect in anything done or omitted by the court . . . is not ground for . . . vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice." MCR 2.613(A).

MCR 2.602(B)(3) provides:

Within 7 days after the granting of the judgment or order, or later if the court allows, a party may serve a copy of the proposed judgment or order on the other parties, with a notice to them that it will be submitted to the court for signing if no written objections to its accuracy or completeness are filed with the court clerk within 7 days after service of the notice. The party must file with the court clerk the original of the proposed judgment or order and proof of its service on the other parties.

(a) If no written objections are filed within 7 days, the clerk shall submit the judgment or order to the court, and the court shall then sign it if, in the court's determination, it comports with the court's decision. If the proposed judgment or order does not comport with the decision, the court shall direct the clerk to notify the parties to appear before the court on a specified date for settlement of the matter.

(b) Objections regarding the accuracy or completeness of the judgment or order must state with specificity the inaccuracy or omission.

(c) The party filing the objections must serve them on all parties as required by MCR 2.107, together with a notice of hearing and an alternative proposed judgment or order.

The judgment the trial court entered does not comport with its oral ruling. At the close of the divorce trial, the court stated,

-6-

At this point I'm going to require the father to provide all transportation to and from parenting time. Transportation issues may be reviewed next summer if either party makes a formal request to do so or if they otherwise agree.

Plaintiff's proposed judgment did not reflect the trial court's oral ruling and, instead, provided that *defendant* was responsible for all transportation to and from parenting time. Defendant objected accordingly. The trial court held a hearing regarding defendant's objections, and stated the following:

The listed objections, there was no—*there was no transcript ordered*, there was no—nothing that I can see that would—would show me that I—that the proposed Judgment was incorrect . . . .

\* \* \*

Well, at this point based on the—my recollection of—of the rulings that I made and *the lack of a—of a transcript that the objection—objecting party would need to provide*, I'm going to enter the Judgment or a copy of the Judgment that was submitted originally under the seven-day rule. [Emphasis added.]

It appears that the court primarily denied defendant's objections based on defendant's failure to procure a copy of a transcript of the prior proceeding. Contrary to the trial court's statement, there is no court rule or caselaw that requires a party who objects to the entry of a proposed judgment under MCR 2.602(B)(3) to provide such a transcript. Indeed, given the compressed timing requirements under this court rule, it is doubtful that timely obtaining a copy of a transcript would be possible in most circumstances.

The trial court erred as a matter of law when it rejected defendant's objections based on the lack of a transcript. Further, when the trial court entered plaintiff's proposed judgment, it entered a judgment that did not comport with its earlier oral ruling.[5] Accordingly, we vacate the judgment and remand to the trial court with instructions to enter a corrected judgment that provides that plaintiff is responsible for all transportation to and from his parenting time with DJ. The trial court should also ensure that the spelling of AJ's name and her birthdate are correct in the final judgment.

---

[5] While we are cognizant that a court speaks through its written orders and not its oral pronouncements, *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009), the orders and judgments arising from MCR 2.602(B)(3) are to comport with those earlier oral pronouncements. Consequently, if the court modifies what it previously stated orally, some type of explanation, at a minimum, would be warranted.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Henry William Saad
/s/ Brock A. Swartzle
/s/ Peter D. O'Connell