# STATE OF MICHIGAN

# COURT OF APPEALS

NICHOLAS JAMES RUSSIAN,

      Plaintiff-Appellant/Cross-Appellee,

v

SHELLEY PORTER,

      Defendant-Appellee/Cross-Appellee,

and

JAMES MICHAEL REBEAUD,

      Intervenor-Appellee/Cross-Appellant.

UNPUBLISHED
August 22, 2017

No. 337168
Oakland Circuit Court
Family Division
LC No. 2016-841940-DC

Before: SAAD, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

Plaintiff appeals the order that revoked his acknowledgment of parentage regarding minor VHP. Intervenor, James Rebeaud, cross-appeals the same order and challenges the trial court's decision to not award him costs and attorney fees. For the reasons provided below, we affirm.

Rebeaud and defendant were in a romantic relationship from the beginning of 2014 until December 27, 2014. Defendant became pregnant with Rebeaud's child, and defendant knew that Rebeaud was the child's biological father. Rebeaud was involved during the pregnancy and went to doctor's appointments with defendant. In December 2014, when Rebeaud and defendant broke up, defendant was approximately eight months into her pregnancy. Also in December 2014, defendant began seeing another man, plaintiff. Afterward, Rebeaud continued to attempt to contact defendant and wanted to know about the birth, but defendant did not cooperate and refused to allow Rebeaud to be at the hospital when defendant ultimately gave birth to VHP on January 14, 2015.

-1-

On April 20, 2015, plaintiff and defendant executed an affidavit of parentage, which asserted that plaintiff was VHP's father. Plaintiff signed the affidavit knowing there was no possibility that he was VHP's biological father. Defendant ended her relationship with plaintiff on May 3, 2016.

On May 6, 2016, plaintiff filed a "Complaint for Custody" and sought joint legal and physical custody and a specific schedule of parenting time with VHP. Defendant filed an answer to the complaint on June 3, 2016, and admitted that plaintiff's name appears on both the birth certificate and affidavit of parentage but asserted that defendant's signature on those documents was obtained under duress and that the signatures are a misrepresentation that plaintiff is or could be the father.

On May 18, 2016, in a separate action, Rebeaud filed a complaint for paternity and a request that the affidavit of parentage be revoked. After that action was dismissed, Rebeaud filed a motion to intervene in this matter.

On November 23, 2016, Rebeaud filed a "Motion and Affidavit to Revoke Acknowledgement of Parentage" under the Revocation of Paternity Act (RPA), MCL 722.1431 *et seq*. Following a three-day evidentiary hearing, the court issued an opinion and order that granted Rebeaud's motion to revoke the acknowledgment of parentage. Although Rebeaud also requested attorney fees, the trial court found that an award of attorney fees to the prevailing party was not warranted under the circumstances.

## I. PLAINTIFF'S APPEAL

Plaintiff argues that the trial court erred when it failed to analyze whether VHP had an established custodial environment with plaintiff, which would have required Rebeaud to prove by clear and convincing evidence that revocation of the acknowledgement of parentage was in VHP's best interest. Because the RPA and applicable caselaw do not require such a determination, we disagree.

Under the RPA, "The mother, the acknowledged father, an alleged father, or a prosecuting attorney may file an action for revocation of an acknowledgment of parentage." MCL 722.1437(1). The statute provides, in pertinent part:

(4) An action for revocation under this section shall be supported by an affidavit signed by the person filing the action that states facts that constitute 1 of the following:

(a) Mistake of fact.

(b) Newly discovered evidence that by due diligence could not have been found before the acknowledgment was signed.

(c) Fraud.

(d) Misrepresentation or misconduct.

-2-

(e) Duress in signing the acknowledgment.

(5) If the court in an action for revocation under this section finds that an affidavit under subsection (4) is sufficient, the court shall order blood or tissue typing or DNA identification profiling as required under section 13(5). The person filing the action has the burden of proving, by clear and convincing evidence, that the acknowledged father is not the father of the child. [MCL 722.1437.]

However, if the court finds that the acknowledged father is not the father of the child, "the court nonetheless may refuse to enter such an order if it would not be in the child's best interest to do so." *Jones v Jones*, ___ Mich App ___; ___ NW2d ___ (2017) (Docket No. 334937), slip op, p 4. MCL 722.1443(4) states, in relevant part, as follows:

A court may refuse to enter an order . . . revoking an acknowledgment of parentage . . . if the court finds evidence that the order would not be in the best interests of the child. The court shall state its reasons for refusing to enter an order on the record. The court may consider the following factors:

(a) Whether the presumed father is estopped from denying parentage because of his conduct.

(b) The length of time the presumed father was on notice that he might not be the child's father.

(c) The facts surrounding the presumed father's discovery that he might not be the child's father.

(d) The nature of the relationship between the child and the presumed or alleged father.

(e) The age of the child.

(f) The harm that may result to the child.

(g) Other factors that may affect the equities arising from the disruption of the father-child relationship.

(h) Any other factor that the court determines appropriate to consider.

Here, plaintiff claims that this Court's decision in *Helton v Beaman*, 304 Mich App 97; 850 NW2d 515 (2014), result aff'd in 497 Mich 1001 (2015), and the RPA required the trial court to analyze whether there was an established custodial environment before revoking plaintiff's acknowledgement of parentage. We do not agree.

The lead opinion in *Helton* (by Judge Peter O'Connell) stated that the Court of Appeals was bound by its earlier decision in *In re Moiles*, 303 Mich App 59; 840 NW2d 790 (2013), which held that the circuit court was not required to conduct a best-interest determination when revoking an acknowledgment of parentage. *Helton*, 304 Mich App at 106. Accordingly, the lead

opinion held that the trial court had mistakenly applied the best interest factors in MCL 722.1443(4). *Id.* at 107-108. However, the lead opinion noted that because the Legislature "did not identify the relevant factors or the legal standard that governs the circuit court's discretion," the opinion considered "analogous caselaw to determine the applicable legal standard for assessing the circuit court's decision in this case." *Id.* at 110. The lead opinion chose to look to the standards used when considering a change in child custody, which required (1) proof by preponderance of evidence of a change in circumstances and (2) where an established custodial environment exists, proof by clear and convincing evidence that a change in custodial environment is in the child's best interests. *Id.* at 111-112. The lead opinion held that the best-interest factors relevant to a custody dispute found in MCL 722.23 favored the defendants and that the circuit court correctly denied Helton's requested relief. *Id.* at 114.

In a concurring opinion, Judge Kirsten Frank Kelly stated that *In re Moiles* was wrongly decided and that the best-interest factors in MCL 722.1443(4) controlled the outcome of the case. *Helton*, 304 Mich App at 114-155 (KELLY, J., concurring). Judge K.F. Kelly stated:

> I agree with the lead opinion that MCL 722.1443(5), which provides that DNA test results are not binding on a trial court, indicates the Legislature's intent to provide trial courts discretion in these cases. However, I also strongly believe that the Legislature, by including the best-interest factors in MCL 722.1443(4), provided the necessary framework for trial courts to exercise that discretion. I therefore disagree with the lead opinion's conclusion that "the Legislature did not identify the relevant factors or the legal standard that governs the circuit court's discretion . . . ." *Ante* at 110. On the contrary, I believe that the Legislature has left no guess work under the RPA and that there is no need to resort to the [Child Custody Act] for guidance. [*Id.* at 123.]

The Michigan Supreme Court subsequently granted leave to appeal and affirmed the result of the Court of Appeals' decision. *Helton*, 497 Mich 1001. The Supreme Court stated:

> We agree with the Court of Appeals authoring and concurring judges that [*Moiles*] wrongly held that a trial court is not required to make a best interest determination under MCL 722.1443(4) in deciding whether to revoke an acknowledgment of parentage. For the reasons explained in section II of the concurring opinion, we hold that an order revoking an acknowledgment of parentage constitutes an order "setting aside a paternity determination" and, therefore, is subject to a best interest analysis under MCL 722.1443(4)." [*Id.*]

Because the Michigan Supreme Court specifically adopted the reasoning in the concurring opinion and held that MCL 722.1443(4) provides the proper framework for analyzing the best

-4-

interests of the child, there is no support for plaintiff's assertion that *Helton* requires a trial court to conduct a specific analysis regarding whether an established custodial environment exists.[1]

Here, the trial court followed the procedural requirements of the statute. First, it required the person filing the motion for revocation (i.e., Rebeaud) to prove by clear and convincing evidence that the acknowledged father (i.e., plaintiff) was not the child's biological father. The trial court found that the DNA evidence and the witness testimony clearly established that plaintiff was not the child's biological father and that neither plaintiff nor defendant ever believed that he was. The trial court then turned to MCL 722.1443(4), which gives the court discretion to nonetheless refuse to enter an order revoking an acknowledgment of parentage "if the court finds evidence that the order would not be in the best interests of the child." See also *Jones*, ___ Mich App at ___; slip op at 4. MCL 722.1443(4) provides a list of factors, which the trial court analyzed fully. Nothing in our caselaw or the plain language of the RPA required the court to address the child's established custodial environment before granting the motion to revoke an acknowledgement of parentage. The trial court correctly applied the RPA and the proper standards for determining the child's best interests.

In a similar vein, plaintiff also argues that the trial court improperly placed the burden of persuasion onto plaintiff, the nonmoving party. Plaintiff's assertion is not supported by the record or the trial court's opinion and order. As discussed above, the trial court first required Rebeaud to prove by clear and convincing evidence that plaintiff was not the child's father. No such burden was placed on plaintiff. Accordingly, plaintiff's argument is without merit.

Plaintiff further broadly argues that the trial court's findings of fact were clearly erroneous and that "the great weight of the evidence" supported a finding that plaintiff was an "involved parent" and that Rebeaud had a "poor parenting history." Our review of the trial court's factual findings in proceedings under the RPA is for clear error. *Id.* at ___; slip op at 2. A court clearly errs when this Court is left with a definite and firm conviction that a mistake was made. *Id.*

Plaintiff's argument on this issue is difficult to follow and it is unclear which specific factual findings plaintiff argues were clearly erroneous. Plaintiff's argument regarding his being involved with VHP and Rebeaud's poor parenting history suggests plaintiff is challenging the trial court's determination under factor (d) regarding the nature of the relationship of the child. However, in its opinion, the trial court specifically found that plaintiff had been involved in VHP's life. The court also considered Rebeaud's more recent involvement with VHP and weighed the factor equally between the two men. Given that there was evidence that Rebeaud's initial efforts to be involved in VHP's life were thwarted, and that, at the time of the hearing, Rebeaud and VHP had developed a bond, this finding was not clearly erroneous. And more

---

[1] Moreover, the rationale in the lead opinion in *Helton* only had the support of one authoring judge. As such, even without the Supreme Court's later adoption of the concurring opinion, the lead opinion would not be binding. See *In re Estate of Cummin*, 267 Mich App 700, 707 n 2; 706 NW2d 34 (2005), rev'd in part on other grounds 474 Mich 1117 (2006); *Fogarty v Dep't of Transp*, 200 Mich App 572, 574-575; 504 NW2d 710 (1993).

importantly, we are not left with a definite and firm conviction that the trial court made a mistake when it found that the evidence, as a whole, failed to show that it was in VHP's best interests to not enter the revocation of the acknowledgment of parentage.

## II. INTERVENOR'S CROSS-APPEAL

On cross-appeal, Rebeaud argues that the trial court abused its discretion when it refused to award him costs and attorney fees under MCL 722.1443(11). We disagree. A trial court's decision regarding whether to award costs and attorney fees is reviewed for abuse of discretion. *McDonald v Grand Traverse Co Elec Comm*, 255 Mich App 674, 697; 662 NW2d 804 (2003). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

MCL 722.1443(11) provides that in an action under the RPA, "[t]he court, in its discretion, *may* order a nonprevailing party . . . to pay the reasonable attorney fees and costs of a prevailing party." (Emphasis added.) While Rebeaud undoubtedly was a prevailing party at the trial court, the Legislature's use of the word "may" indicates that the trial court had permission to grant Rebeaud attorney fees—it was not required to do so. See *Detroit Edison Co v Stenman*, 311 Mich App 367, 384 n 8; 875 NW2d 767 (2015).

Based on the circumstances of this case, we are not persuaded that the trial court abused its discretion when it refused to award attorney fees to Rebeaud. Rebeaud argues that attorney fees should have been awarded because both plaintiff and defendant admitted that they knew that Rebeaud was VHP's father at the time plaintiff and defendant executed the affidavit of parentage. The fact that plaintiff executed the affidavit of parentage *with full knowledge that he was not VHP's father* could be viewed as favoring the award of attorney fees because there is no question that without plaintiff's signing of the affidavit, the proceeding to revoke the affidavit would not have been necessary. However, there are other facts to consider. Specifically, plaintiff testified that he signed the affidavit because he loved defendant and VHP and "there was nobody else that was available to be [VHP's] father" at the time. It is important to note that while Rebeaud states that defendant denied him information about the birth of VHP, Rebeaud knew that she was eight months pregnant with his child when they broke up at the end of December 2014. While knowing that the birth of his child was imminent, Rebeaud took no legal action until May 2016 to protect and/or assert his legal rights. According to plaintiff, it was this absence of any other father in VHP's life that was the driving force for him to sign the affidavit of parentage. Hence, Rebeaud's own delay in asserting his rights arguably created the need for additional litigation in this matter. Consequently, we cannot say that the trial court selected an unreasonable outcome when it determined that plaintiff should not be responsible for Rebeaud's attorney fees.

Affirmed.  No taxable costs, as neither party prevailed in full.


/s/ Henry William Saad
/s/ Deborah A. Servitto
/s/ Michael F. Gadola