*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CAMERON LEE BEILFUSS,

        Plaintiff-Appellant,

v

ALLISON NICOLE ADAMS,

        Defendant-Appellee.

UNPUBLISHED
October 6, 2022

No. 354923
Hillsdale Circuit Court
LC No. 20-000266-DS

CAMERON LEE BEILFUSS,

        Plaintiff-Appellant,

v

ALLISON NICOLE ADAMS,

        Defendant-Appellee,
and

SHAWN ROBEY,

        Intervenor-Appellee.

No. 358025
Hillsdale Circuit Court
LC No. 20-000266-DS

JUSTIN ADAMS,

        Plaintiff,

v

ALLISON ADAMS,

        Defendant-Appellee,

No. 358026
Hillsdale Circuit Court
LC No. 18-000077-DM

and

CAMERON BEILFUSS,

        Appellant.

---

Before: SAWYER, P.J., and LETICA and PATEL, JJ.

PER CURIAM.

In these consolidated interlocutory appeals, Cameron Lee Beilfuss appeals various orders entered regarding his paternity of the minor child, KA, who was born when her mother, Allison Adams, was married to another man. During the first two years of her life, KA lived solely with Adams and Beilfuss. Even after the couple separated, Beilfuss' devotion to KA did not wane. This four-year-old child has not known any other man as her father. But the trial court disestablished Beilfuss' paternity and extinguished his parental rights without making any factual findings, considering the equities of the case, or evaluating KA's best interests. We conclude that this was clear error.

In Docket No. 354923, Beilfuss appeals by leave granted[1] the trial court's sua sponte invalidation of the jointly executed acknowledgment of parentage. Because Adams subsequently filed a motion under the Revocation of Paternity Act (RPA), MCL 722.1431 *et seq*, which the trial court granted, this issue is moot.

In Docket No. 358025, Beilfuss appeals by delayed leave granted[2] the trial court's revocation of the jointly executed acknowledgment of parentage. The trial court revoked the acknowledgment of parentage without making any factual findings regarding the sufficiency of Adams' affidavit claiming duress. Accordingly, we vacate the order and remand for further proceedings.

And in Docket No. 358026, Beilfuss appeals by delayed leave granted[3] the trial court's rescission of the portion of the February 20, 2018, order determining Beilfuss' paternity of KA. We conclude that the trial court abused its discretion in granting relief without considering the equities of the case. Accordingly, we vacate the order and remand for further proceedings.

---

[1] *Beilfuss v Adams*, unpublished order of the Court of Appeals, entered December 23, 2020 (Docket No. 354923).

[2] *Beilfuss v Adams*, unpublished order of the Court of Appeals, entered October 29, 2021 (Docket No. 358025).

[3] *Adams v Adams*, unpublished order of the Court of Appeals, entered October 29, 2021 (Docket No. 358026).

## I. BACKGROUND

At the time of KA's conception and birth, Adams was married to, but separated from, Justin Adams. Following KA's birth, Justin commenced divorce proceedings. Justin's divorce complaint requested the trial court to determine that he was not KA's biological or legal father. Contemporaneous with the complaint, Justin filed a motion for determination of nonpaternity.[4] Adams did not respond to the complaint for divorce or the motion. And Beilfuss was not a party to the action.[5]

Justin testified that he had not had any sexual contact with Adams since their separation 10 months prior. Justin maintained that Adams stated KA's father was the man she was currently dating, and she identified Beilfuss as that man. Neither Adams nor Beilfuss testified at the hearing.[6] And no DNA testing was offered or ordered. Based on Justin's testimony, the trial court found that Justin was not KA's biological father, that Beilfuss was KA's biological father, and ordered that the Bureau of Vital Records amend the birth certificate to reflect those findings.[7] Additionally, the divorce judgment contained the following provision:

---

[4] A "presumed father" is defined under the RPA as "a man who is presumed to be the child's father by virtue of his marriage to the child's mother at the time of the child's conception or birth." MCL 722.1433(e). The RPA permits the trial court to determine that a child was born out of wedlock for the purpose of establishing paternity if the presumed father raises the issue in an action for divorce between the presumed father and the mother. MCL 722.1441(2).

[5] Beilfuss was not legally entitled to intervene in Adams' divorce proceedings. "Domestic relations actions are strictly statutory. The only parties to a divorce action are the two people seeking dissolution of their marriage." *Killingbeck v Killingbeck*, 269 Mich App 132, 140 n 1; 711 NW2d 759 (2005). In fact, "third parties can be joined in [a] divorce action only if they have conspired with one spouse to defraud the other spouse of a property interest." *Estes v Titus*, 481 Mich 573, 583; 751 NW2d 493 (2008). Beilfuss' recourses were limited to filing an action under the Paternity Act (PA), MCL 722.711, *et seq.*, executing an acknowledgment of parentage under the Acknowledgment of Parentage Act (APA), MCL 722.1001 *et seq.*, or filing an action under the RPA.

[6] Adams maintained that she was on bedrest following KA's birth at the time of the hearing and claimed that she was unaware that any paternity issues were going to be addressed at the hearing. She later asserted that she never told Justin who KA's father was and that Justin was speculating as to the biological father.

[7] The order was supposed to be sent to the Bureau to issue an amended birth certificate. But KA's birth certificate was never amended.

## CHILD NOT OF MARRIAGE

**IT IS FURTHER ORDERED AND ADJUDGED** that [KA], is not a child of this marriage as previously found by this Court at a hearing dated 02/15/2018 where representations were made in Court that Cameron Beilfuss is the father of this child born to [Adams].

For over two years after KA's birth, Adams and Beilfuss remained in a relationship, lived together, and raised KA together. During that time, Beilfuss supported Adams and KA, Adams held Beilfuss out to be KA's father, and Beilfuss treated KA as his own. In March 2020, the couple separated. Adams and KA moved out of the home that they shared with Beilfuss. The parties continued to co-parent KA, but problems developed.

In May 2020, Beilfuss initiated an action to establish custody of, and support for, KA. Beilfuss maintained that he was KA's legal father as established by (1) the February 20, 2018, order of filiation determining Beilfuss' paternity of KA, and (2) a May 2020 acknowledgment of parentage that Beilfuss, but not Adams, signed. The matter was handled by the same judge that had presided over the divorce action. At the hearing, Adams denied that Beilfuss was KA's biological father. Instead, she named Shawn Robey as the biological father. Adams contended that Beilfuss knew that he was not KA's biological father. Ultimately, the trial court disregarded its paternity order and the divorce judgment, which both declared Beilfuss as KA's father.[8] The trial court ordered DNA testing and granted Beilfuss parenting time pending the DNA results.

On June 15, 2020, Beilfuss and Adams jointly executed an acknowledgment of parentage acknowledging that Beilfuss was KA's natural father in accordance with the APA. The acknowledgment of parentage, which was affirmed under penalty of perjury, specifically stated that it was voluntary and that the parties waived the right to blood or genetic tests to determine if Beilfuss was KA's biological father.

On July 14, 2020, during a hearing regarding parenting time, Adams once again claimed that Beilfuss was not KA's biological father despite the joint execution of the acknowledgment of parentage. She maintained that she signed the acknowledgment of parentage "because when I sat down with him and his lawyer and his mother last court date, I felt like I had no choice, but to sign it." The trial court ordered the parties to submit to DNA testing and, because Adams raised allegations concerning KA's safety, the trial court held Beilfuss' parenting time in abeyance.

Although Adams and KA provided samples for DNA testing, Beilfuss did not. He challenged the trial court's authority to require him to submit to DNA testing. He argued that his paternity had already been legally established by the February 20, 2018, order of filiation, and by the June 15, 2020, jointly executed acknowledgment of parentage. Although Adams had stated that she felt that she "had no choice, but to sign it," Beilfuss maintained that the acknowledgment

---

[8] While the trial court questioned its findings that supported the February 2018 paternity order, it did not set aside or modify the paternity order or the divorce judgment. Hence, both remained valid. See *Cassidy v Cassidy*, 318 Mich App 463, 509; 899 NW2d 65 (2014)("[A] court speaks through its written orders and judgments, not through its oral pronouncements.").

-4-

of parentage was valid because Adams did not initiate an action under the RPA to revoke the acknowledgment. The trial court disagreed. In a September 2020 order, the trial court sua sponte invalidated the acknowledgment of parentage pending DNA testing, ordered Beilfuss to submit to DNA testing, and denied Beilfuss' request to reinstate parenting time. Following this Court's grant of Beilfuss' application for leave to appeal, the successor trial court judge granted a stay of proceedings, reinstated his parenting time, and ordered that Beilfuss was not required to submit to DNA testing unless and until this Court affirms the trial court's prior orders.

Thereafter, Adams moved to revoke the acknowledgment of parentage under MCL 722.1437. The motion was supported by Adams' affidavit, wherein she asserted that Robey, not Beilfuss, was KA's biological father. She asserted several statutory grounds for revocation, including that Beilfuss had committed fraud, misrepresentation, or other misconduct by signing the acknowledgment of parentage knowing that he was not KA's biological father.[9] She provided a text message purportedly from Beilfuss stating, "We already know the DNA will show up as [S]hawn!" Adams further contended that there was a mistake of fact because the parties did not engage in sexual relations until after KA's birth. And Adams maintained that she signed the acknowledgment of parentage under duress:

> I was under Duress in signing the acknowledgment as on that day I was at the courthouse without an attorney, was pulled aside with [Beilfuss], [his] mother and [his] attorney who advised me if I got DNA testing that it would look bad for myself as the biological father was in prison. [His] attorney went on to advise that if that is done that the State will come after me insinuating that I may lose custody of the child. [His] attorney went on to advise that if I went forward with DNA testing with Mr. Shawn D. Robey, considering he is in prison, he was unsure what [the trial court] may do. All of these tactics caused myself, who was not represented by counsel, to be under duress feeling I had no other option than to sign otherwise there was a chance I would have my child removed from my care.

Adams further claimed that, at an August 2020 hearing, the trial court had invalidated the February 2018 order of filiation because it was based solely on the testimony of Adams' ex-husband.

Beilfuss denied all allegations of fraud, duress, and mistake of fact. He also argued that the motion was untimely because it was filed more than three years after KA's birth and more than one year after the February 2018 order affiliating Beilfuss as KA's father. In response to the duress allegations, Beilfuss' prior attorney swore in an affidavit that he had advised the parties that they should *not* sign an acknowledgment of parentage and should obtain a DNA test. He denied that he told Adams that a DNA test would look bad for her because the biological father was in prison or that he insinuated that Adams might lose custody of KA if she obtained DNA testing. He

---

[9] "Under the Acknowledgment of Parentage Act, MCL 722.1001 *et seq.*, an acknowledging father is not required to attest that he is the biological father. Thus . . . the parties' knowledge of the possibility that [an acknowledging father] was not the biological father of the child [is not] sufficient to demonstrate either fraud or misrepresentation under MCL 722.1437(2)." *In re Moiles*, 495 Mich 944; 843 NW2d 2020 (2014).

maintained that his advice to refrain from signing an acknowledgment of parentage was based on the statements that Adams made to the trial court during the June 15, 2020, hearing. He contended that he was not present when Beilfuss and Adams signed the acknowledgment of parentage.

The trial court accepted Adams' affidavit on its face, concluding that the duress allegation was properly pled and that the revocation action was timely under MCL 722.1437 because it was filed within one year of the jointly executed acknowledgment of parentage. On March 18, 2021, the trial court entered an order granting Adams' motion to revoke the acknowledgment of parentage and requiring Beilfuss to submit to DNA testing. Beilfuss' parenting time was continued.

Subsequently, Robey filed a motion to intervene and a motion to revoke the acknowledgment of parentage. He supported his motion with his affidavit. which asserted that he was KA's biological father. Like Adams, Robey alleged mistake of fact and fraud, stating that Beilfuss could not be KA's biological father and lied when he signed the acknowledgment of parentage. The trial court granted Robey's motion to intervene and allowed him to participate in DNA testing.

Contemporaneous with her motion to revoke the acknowledgment of parentage, Adams filed a motion for relief from judgment under MCR 2.612(C)(1)(f) in the divorce action. Adams argued that the February 2018 order of filiation should be rescinded, that the "Child Not of Marriage" provision in the divorce judgment should be stricken, and that the matter be set for hearing. Adams argued that the February 2018 order was not supported by sufficient facts because it was based solely on Justin's testimony, which Adams maintained was false. She further claimed that the trial court's predecessor had "ruled" that the 2018 paternity order (entered in the divorce action) was "invalid" during an August 2020 hearing in the custody action. Because Beilfuss was not a party to the divorce action, he was not served with the motion for relief from judgment or notice of hearing.

On April 8, 2021, the trial court entered an order rescinding the provision in the February 2018 order stating that Beilfuss is KA's biological father, but retaining the finding that KA was not the issue of the Adams' marriage. The trial court further ordered that the divorce judgment provision was upheld because "[t]here is no judicial finding in the Judgment of Divorce establishing who the minor child's . . . biological father is."

Subsequently, Beilfuss sought to intervene in the divorce action in order to seek relief from the court's April 8, 2021 order. The trial court denied the motion.

Beilfuss filed delayed applications for leave to appeal the March 18, 2021 order revoking the acknowledgment of parentage and the April 8, 2021 order rescinding the portion of the February 2018 determining paternity. This Court granted the application and consolidated all three appeals.

## II. DOCKET NO. 354923

Beilfuss first argues that the trial court erred by sua sponte invalidating the jointly executed acknowledgment of parentage, ordering DNA testing, and suspending his parenting time absent

-6-

proper proceedings under the RPA. Because Adams subsequently filed a motion to revoke the acknowledgment of parentage under the RPA, which the trial court granted, this issue is moot.

## A. STANDARDS OF REVIEW

We review questions of law, including issues of statutory construction, de novo. *Sinicropi v Mazurek*, 273 Mich App 149, 155; 729 NW2d 256 (2006). We also review "de novo whether an issue is moot." *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 (2016). And a trial court's factual findings are reviewed for clear error. *Jones v Jones*, 320 Mich App 248, 253; 905 NW2d 475 (2017). "The trial court has committed clear error when this Court is definitely and firmly convinced that it made a mistake." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

"The question of mootness is a threshold issue that a court must address before it reaches the substantive issues of a case." *In re Tchakarova*, 328 Mich App 172, 178; 936 NW2d 863 (2019). "This Court does not decide moot issues." *Garrett*, 214 Mich App at 449. "A matter is moot if this Court's ruling cannot for any reason have a practical legal effect on the existing controversy." *Id.* (quotation marks and citation omitted).

Beilfuss challenges the trial court's authority to sua sponte invalidate the jointly executed acknowledgment of parentage absent proper proceedings under the RPA. However, after this Court granted leave, Adams filed a motion to revoke the acknowledgment of parentage under the RPA, which the trial court granted. Beilfuss' challenge to the revocation is the subject of his appeal in Docket No. 358025. The trial court has reinstated his parenting time and ordered that he was not required to submit to DNA testing unless and until this Court affirms the trial court's prior orders. Thus, the subsequent proceedings have rendered the issues moot. We do not decide moot issues. *Garrett*, 214 Mich app at 449.

## III. DOCKET NO. 358025

Beilfuss next argues that the trial court erred by revoking the jointly executed acknowledgment of parentage without making any factual findings. We agree.

## A. STANDARDS OF REVIEW

"We review a trial court's factual findings regarding a revocation of paternity action for clear error." *Kalin v Fleming*, 322 Mich App 97, 100; 910 NW2d 707 (2017). "The trial court has committed clear error when this Court is definitely and firmly convinced that it made a mistake." *Id.* (quotation marks and citation omitted).

We review questions of law, including issues of statutory construction, de novo. *Sinicropi*, 273 Mich App at 155. "The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). "Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied

as written." *Honigman Miller Schwartz & Cohn LLP v City of Detroit,* 505 Mich 284, 294; 952 NW2d 358 (2020) (quotation marks and citations omitted).

## B. THE ACKNOWLEDGMENT OF PARENTAGE ACT

Pursuant to the APA, Beilfuss and Adams jointly executed an affidavit of parentage form acknowledging that Beilfuss was KA's natural father.[10] A signed acknowledgment "establishes paternity" and "may be the basis for court ordered child support, custody, or parenting time . . ." MCL 722.1004. Thus, Beilfuss was KA's legal father and had established paternity. An acknowledgment of parentage confers upon the child "the identical status, rights, and duties of a child born in lawful wedlock effective from birth." MCL 722.1004. By executing the acknowledgment of parentage, Beilfuss became KA's "acknowledged father" under the RPA. MCL 722.1433(a). A child may have only one legal father. *Sinicropi*, 273 Mich App at 164. But the rights of a biological father are not superior to the rights of an acknowledged father. *Id*. at 159 n 2.

## C. THE REVOCATION OF PATERNITY ACT

The RPA authorizes a child's "mother, the acknowledged father, an alleged father, or a prosecuting attorney [to] file an action for revocation of an acknowledgment of parentage." MCL 722.1437(1).[11] Such an action "shall be supported by an affidavit signed by the person filing the action that states facts that constitute" one of the following five statutory grounds for revocation:

(a) Mistake of fact.

(b) Newly discovered evidence that by due diligence could not have been found before the acknowledgment was signed.

(c) Fraud.

(d) Misrepresentation or misconduct.

(e) Duress in signing the acknowledgment. [MCL 722.1437(4).]

"The person filing the action has the burden of proving, by clear and convincing evidence, that the acknowledged father is not the father of the child." MCL 722.1437(5). The trial court must make factual findings concerning the sufficiency of the supporting affidavit. See MCL

---

[10] "If a child is born out of wedlock, a man is considered to be the natural father of that child if the man joins with the mother of the child and acknowledges that child as his child by completing a form that is an acknowledgment of parentage." MCL 722.1003.

[11] Beilfuss argues that Adams' motion to revoke the acknowledgement of parentage was untimely. The RPA requires that an action be brought "within 3 years after the child's birth or within 1 year after the date that the acknowledgment of parentage was signed, whichever is later." MCL 722.1437(1). Adams filed her motion on February 26, 2021, which was within one year of the June 15, 2020, acknowledgment of parentage. Thus, it was timely.

722.1437(5). "[A] determination of the sufficiency of the affidavit is a requisite step in the analysis prescribed by MCL 722.1437." *Helton v Beaman*, 304 Mich App 97, 103 n 4; 850 NW2d 515 (2014) (O'CONNELL, J).

In this case, Adams' affidavit averred that she was "under duress" when she signed the acknowledgment of parentage because Beilfuss, his mother, and his attorney allegedly made statements that it would "look bad" if DNA testing revealed Robey was KA's biological father and insinuated that she might lose custody of KA if she went forward with DNA testing. Adams did not assert that anyone directly threatened her to sign the acknowledgment. In fact, the acknowledgment of parentage, which was affirmed under penalty of perjury, specifically stated that its completion was voluntary. The statements in Adams' affidavit were contradicted by an affidavit from Beilfuss' prior attorney, who maintained that he advised the parties *not* to sign an acknowledgment of parentage, denied that he told Adams that a DNA test would look bad for her, or that he insinuated that she might lose custody of KA. Despite these contradictions, the trial court accepted Adams' claim of duress "on its face," did not address any of the conflicting facts raised by the parties, and concluded that the duress allegation was "properly pled." The trial court clearly erred by failing to make any factual findings regarding the sufficiency of Adams' affidavit as to her claim of duress.

Additionally, "an order revoking an acknowledgment of parentage constitutes an order 'setting aside a paternity determination' and, therefore, is subject to a best interest analysis under MCL 722.1443(4)." *Helton v Beaman*, 497 Mich 1001, 1001; 861 NW2d 621 (2015). See also *Jones*, 320 Mich App at 256 n 3 ("[A] court is required to always perform a best-interest evaluation under MCL 722.1443(4). Otherwise, the court would not be aware that the best interests indicate that the revocation should not be granted. . . ."). The best-interest factors include:

> (d) The nature of the relationship between the child and the presumed or alleged father.
>
> (e) The age of the child.
>
> (f) The harm that may result to the child.
>
> (g) Other factors that may affect the equities arising from the disruption of the father-child relationship.
>
> (h) Any other factor that the court determines appropriate to consider. [MCL 722.1443(4).]

The record does not reflect that the trial court considered any best-interest factors under MCL 722.1443(4) before revoking the jointly executed acknowledgment of parentage. On remand, if the trial court finds that the facts sufficiently support Adams' claim of duress, the court shall conduct a best-interest evaluation under MCL 722.1443(4) before deciding whether to revoke the acknowledgment of parentage.

Beilfuss also challenges the trial court's rescission of the portion of the February 2018 order affiliating Beilfuss as KA's father. We conclude that the trial court abused its discretion in granting that relief without considering the equities of the case.

## A. STANDARDS OF REVIEW

We review questions of law de novo, which includes issues of statutory construction, *Sinicropi*, 273 Mich App at 155, and the interpretation of a court rule, *Adler v Dormio*, 309 Mich App 702, 707; 872 NW2d 721 (2015). A trial court's decision to set aside a judgment under MCR 2.612 is reviewed for an abuse of discretion. *Adler*, 309 Mich App at 707. "A trial court has not abused its discretion if its decision results in an outcome within the range of principled outcomes." *Id*. And a trial court's factual findings are reviewed for clear error. *Jones*, 320 Mich App at 253. "The trial court has committed clear error when this Court is definitely and firmly convinced that it made a mistake." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

"Among other things, the Revocation of Paternity Act governs actions to determine that a presumed father is not a child's father. . . ." *Demski v Petlick,* 309 Mich App 404, 423; 873 NW2d 596 (2015) (quotation marks and citations omitted). A "presumed father" is a "man who is presumed to be the child's father by virtue of his marriage to the child's mother at the time of the child's conception or birth." MCL 722.1433(e). The RPA authorizes a court to declare that a "presumed father" is not a child's legal father because the child was born out of wedlock. MCL 722.1441(2).

Because Justin was married to Allison at the time KA was born, he was a presumed father under MCL 722.1433(e). Based on testimonial evidence, the trial court found that KA was not a child of Justin and Allison's marriage and was born out of wedlock under the RPA. In light of the testimony, the trial court affiliated Beilfuss at KA's father.[12] Beilfuss affirmatively relied on the trial court's order of filiation to establish his paternity of KA in the subsequent child custody proceedings.[13] While the trial court later questioned the validity of the order of filiation during the

---

[12] The RPA defines an "affiliated father" as "a man who has been determined in a court to be the child's father." MCL 722.1433(b). An "order of filiation" is "a judicial order establishing an affiliated father." MCL 722.1433(f).

[13] The Child Custody Act, MCL 722.21 *et seq*., authorizes "parents" to initiate child custody actions. See *Aichele v Hodge*, 259 Mich App 146, 165; 673 NW2d 452 (2003). A "parent" is defined as "the natural or adoptive parent of a child." MCL 722.22(i). "A man is a parent under the Child Custody Act only if (1) he is presumed to be a parent by law because the child was born in wedlock, (2) there has been a prior court determination that he is the parent of a child born out of wedlock, or (3) he has acknowledged parenthood of a child born out of wedlock." *Aichele*, 259 Mich App at 167.

child custody proceedings, it never set aside the order. Thus, the order remained valid and established that Beilfuss was KA's legal father.

Three years after the order was entered, Adams filed a motion for relief from the order under MCR 2.612(C)(1)(f), arguing that the prior trial court judge had found the order to be invalid. MCR 2.612(C)(1)(f) states that:

> On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:
>
> * * *
>
> (f) Any other reason justifying relief from the operation of the judgment.

To set aside a judgment or order under MCR 2.612(C)(1)(f), three requirements must be met:

> (1) the reason for setting aside the judgment must not fall under sub-sections a through e, (2) the substantial rights of the opposing party must not be detrimentally affected if the judgment is set aside, and (3) extraordinary circumstances must exist which mandate setting aside the judgment in order to achieve justice. [*Adler*, 309 Mich App at 708 (quotation marks, citation, and footnote omitted).]

Generally, relief is granted under subsection (f) only when the judgment was obtained by the improper conduct of the party in whose favor it was rendered. *Id*. Although subsection (f) is the broadest avenue for relief under the court rule, "[w]ell-settled policy considerations favoring finality of judgments circumscribe relief under MCR 2.612(C)(1)." *Rose v Rose*, 289 Mich App 45, 58; 795 NW2d 611 (2010). A motion under MCR 2.612(C)(1)(f) must be brought within a reasonable time. MCR 2.612(C)(2).

In this case, the trial court invalidated the portion of the February 20, 2018, order affiliating Beilfuss as KA's father on the basis that the prior judge had "overruled" himself in an oral pronouncement at a hearing in the separate custody matter. But "a court speaks through its written orders and judgments, not through its oral pronouncements." *Cassidy*, 318 Mich App at 509. The trial court clearly erred in finding that the prior judge had overruled himself when no order was entered.

Further, the trial court failed to evaluate the common-law criteria necessary for relief under MCR 2.612(C)(1)(f), or consider the equities of the case, including the prejudice to the third parties and the timeliness of the motion. As recognized by our Supreme Court, "[p]arents have a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process." *In re JK*, 468 Mich 202, 210, 661 NW2d 216 (2003) (citation omitted). A legal parent's right to parent his child

> is "essential to the orderly pursuit of happiness by free men," *Meyer* [*v Nebraska*, 262 US 390, 399; 43 S Ct 625; 67 L Ed 1042 (1923)], and "is perhaps the oldest of the fundamental liberty interests," *Troxel v Granville*, 530 U S 57, 65; 120 S Ct

-11-

2054; 147 L Ed 2d 49 (2000) (opinion by O'CONNOR, J.). The right is an expression of the importance of the familial relationship and "stems from the emotional attachments that derive from the intimacy of daily association" between child and parent. *Smith v Org of Foster Families for Equality & Reform*, 431 US 816, 844; 97 S Ct 2094, 53 L Ed 2d 14 (1977). [*In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014).]

Likewise, KA has "parallel rights to the integrity of [her] family" and "a due process liberty interest in . . . her family life." *Helton*, 304 Mich App at 125 (K. F. KELLY, J., concurring) (quotation marks and citations omitted). Beilfuss' and KA's interests should have been considered before rescinding the portion of the February 2018 order establishing Beilfuss' paternity of KA. Accordingly, we vacate the trial court's order and remand the matter for determination whether Adams is entitled to relief under MCR 2.612(C)(1)(f), or otherwise, considering the equities of the case.

## V. CONCLUSION

Docket No. 354923 is dismissed as moot. The trial court's orders in Docket Nos. 358025 and 358026 are vacated and the matters are remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Anica Letica
/s/ Sima G. Patel